Cora N. Markley, Appellant, v. Edward D. McCulloch and Elwood R. Kroos, Executors of the Last Will and Testament of John H. Markley, Deceased, and Harriet M. Kroos, Appellees.

Gen. No. 8,892.

Heard in this court at the

February term, 1935. 

 Opinion filed April 22, 1935.

CLARENCE W. HEYL, of Peoria, for appellant.

MILLER, ELLIOTT & WESTERVELT, of Peoria, for appellees; JOHN M. ELLIOTT and DONALD G. BESTE, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

On February 15, 1932, Cora N. Markley filed her bill in the circuit court of Peoria county praying for the construction of the will of her deceased husband, John H. Markley. The bill requests in particular that the intention of the testator as expressed in the fourth clause of his will be judicially determined. The complainant's construction of the fourth clause appears from the allegations of her bill.

The bill alleges that the testator died on March 28, 1931, possessed of household furniture, mortgages, notes, cash, choses in action and other personal property, some of which was located at his home at the time of his death and the remainder in a bank safety deposit box under his possession and direct control; that by the word "chattel property" of the fourth clause of his will, the testator intended to and did bequeath to the complainant all his personal property, except the articles specifically bequeathed in the second and third clauses of his will. The executors of the will and Harriet M. Kroos, the daughter of the testator by a former marriage, were made parties defendant to the bill.

The defendants filed a joint and several answer to the bill. The answer alleges that all the personal property of the testator, other than the household furniture, automobile and a small sum of money, was not located or kept in the testator's home, but at the time

of his death was in a safety deposit box in the Central National Bank and Trust Company, of Peoria, and with the People's Loan and Homestead Association of Peoria. The answer further alleges that the will makes no disposition of the testator's cash on hand, stocks, bonds, building and loan stock, deposits in bank, notes and choses in action, but that the same is intestate property, and passes under the law of descent.

The first clause of the will directs that the debts of the testator be paid. The second bequeaths testator's watch to his nephew. The third bequeaths to testator's daughter his victrola, and also all solid silverware which belonged to the daughter's mother during her lifetime, or to the testator.

The fourth clause is as follows: "My automobile, and all my household furniture and chattel property contained in my home, now at #204 Ellis Street, Peoria, Illinois, but wheresoever the same may then be situated, unless otherwise disposed of, I give and bequeath unto my beloved wife, Cora N. Markley, provided, that if my said wife shall not survive me, then and in that case, the property in and by this provision disposed of shall descend to my heirs as intestate estate."

The fifth clause of the will devises in fee to the complainant two lots in Port Angeles, Washington. The sixth clause provides that any contract for the conveyance of real estate devised to the testator by his former wife, Fannie E. Markley, the mother of Harriet M. Kroos, remaining partly unperformed be completed by the executors of testator's will, and that one-half of the proceeds of such sale or sales be paid by his executors to Harriet M. Kroos according to the last will of Fannie E. Markley, which, testator's will states, devised to testator a one-half interest in said real estate of Fannie E. Markley.

The testator appointed Elwood Kroos, husband of Harriet M. Kroos, and testator's friend, Edward D.

McCulloch, executors of the will which contains no residuary clause.

The cause was referred to the master for findings of fact and conclusions of law. The master found that the testator died possessed of bonds, and shares of stock in corporations and building association of the par value of $6,104.68; checking account in Central National Bank of Peoria, $322.83; savings account in said bank, $735.52; certificate of membership issued to testator in Banker's Life Association of Des Moines, Iowa, for $2,000, assigned as security for money loaned and premiums advanced, $2,581.11; household goods and Hupmobile sedan, estimated value $500; notes secured by real estate mortgage, $4,200.35; that at the time of the execution of the will, the testator was residing with his wife at a home at 204 Ellis street; that about three months before his death testator and his wife moved to 225 North Sheridan Road where he resided at the time of his death; that both of said places are in Peoria, Illinois.

The master further found that the testator for many years prior to his decease, and at the time of his death, kept a safety box No. 1073, in the Central National Bank and Trust Company of Peoria, and also for some time before and at the time of his death kept some of his valuable papers in a tin box at his home; that the complainant had a key and access to said safety deposit box, and said tin box in which she was permitted to deposit any documents or valuables.

The master further found that the certificate of stock in the People's Loan and Homestead Association, No. 10399, listed in the inventory for 28 shares of Class E. Stock, was prior to and at the time of the death of the testator, in the possession of the association, held as collateral for a previous loan made by the association to the testator.

The master further found that a part of the personal property listed in the inventory filed in the estate

was obtained by the executors from the complainant, and a part of the same from the safety deposit box in the Central National Company; that it does not appear from the evidence how the complainant became possessed of any of said personal property belonging to said estate, which she turned over to the executors; that on March 14, and March 16, 1931, complainant was in the Central National Bank and Trust Company, and examined the safety deposit box; that she testified her reason for examining the contents of said box was to get income tax papers and deeds; that the tin box kept by the testator contained deeds to property, insurance papers, fire insurance papers, and one George Markley loan stock certificate; that the complainant did not remember the various documents she obtained from said box and turned over to the executors; that objection was made before the master by the appellees that the complainant was disqualified as a witness under the statute, and her testimony was taken by the master subject to this objection.

The master also found that there is no evidence establishing the value or extent of any personal property belonging to said estate, contained in said tin box, or any other place in the said testator's home at the time of his death; that there is no evidence establishing what, if any, chattel property was contained in the home of the testator at 204 Ellis street, at the time of the execution of his will.

The complainant, who is the appellant in this court, does not contend that the findings of fact by the master, which were confirmed by the chancellor, are not supported by the evidence in the case. We deem it fair to state that it does not appear from the evidence what papers of the testator were in the tin box and what papers were in the safety deposit box at the time of his death. Edward D. McCulloch, one of the executors of the will, testified he received some of the contracts and other choses in action which were a part of

the testator's estate from the complainant and some, he thought, were in the safety deposit box. He testified, "I could not tell from an examination of the inventory (filed in the estate of testator) what papers I received from her, and the ones I received from the bank. They were turned over to me after Mr. Markley's death." The evidence, we are convinced, shows that the testator had no secrets with reference to his possessions and that the complainant during the lifetime of the testator had keys to the two boxes.

The master's conclusions of law were also confirmed by the chancellor and the final decree held that by the fourth clause of his will the testator clearly intended to bequeath to the complainant only the automobile and all household furniture then used and contained in a specific address, namely, 204 Ellis street, Peoria, Illinois, and it was clearly not the intention of the testator to bequeath to complainant all his personal property; that it was the intention of the testator to bequeath to the complainant only his automobile, household goods used by them in their home, and chattels of the same kind and character and specifically enumerated in the fourth clause; that it clearly appears from the will that it was the intention of the testator that all other personal property owned and possessed by him, except the bequests made in the second and third clauses, should pass as intestate property; that all other personal property of the testator consisting of notes, mortgages, cash, choses in action, stocks, bonds, deposits in bank, including checking and savings accounts, and all other personal property in the safety deposit box of said testator, or in the possession of the Central National Bank and Trust Company of Peoria, or the People's Loan and Homestead Association of Peoria, Illinois, for said testator, and now in the possession of the executors of the will, is intestate property, passing to the widow and the heir according to the law of descent of the State of Illinois.

Both counsel for the parties agree that the proper construction of clause four of the will should be reached by ascertaining the intention of the testator as shown by the will, and that the controlling rule of interpretation of wills is that the intention of the testator as gathered from the whole will should control, provided it is not inconsistent with the settled rules of law; that the intention sought is not what by inference may be presumed to have been in the mind of the testator but that which he expressed by the words of his will. The whole scope of the will must be considered and every provision given due weight to ascertain the plan of the testator in the light of the facts and circumstances surrounding him, his family and property at the time the will was made. *Heitzig v. Goetten*, 347 Ill. 619.

It is contended by the complainant that the words chattel or chattel property have been defined by our Supreme Court as broad enough to include property of almost every description, providing the same is movable, and that therefore the words "chattel property" used by the testator in the fourth clause of his will include choses in action belonging to the testator at the time of his death; that the words of the fourth clause, "wheresoever the same may then be situated" refer to the situation of the testator's furniture and chattel property and consequently all the personal property of the testator, including choses in action, was bequeathed by the will to the complainant no matter where the same was situated at the time of the testator's death. It is further contended by the complainant that as the will contains no residuary clause, words and phrases used in the will which may reasonably be interpreted to pass the entire personal estate of the testator should be given that effect to prevent partial intestacy; also, that the will shows an intention of the testator, duly expressed in his will, to pass the

whole of his estate and the presumption against intestacy should be applied in construing the will.

The appellees contend that the words "chattel property" appearing in the fourth clause of the will, of themselves, and as construed by the courts, do not include choses in action; that the words "chattel property" should be confined, in this case, to things partaking of the nature of "household furniture" under the rule of construction, *ejusdem generis;* that the testator meant by his will to restrict the property given to the complainant by the fourth clause to such as was located in his home wherever situated, and a description of personal property by location does not ordinarily pass choses in action. It is further contended by the appellees that the presumption against intestacy should not be applied in this case, as an aid in construing the will, because it clearly appears from the will that the testator intended to die intestate as to a portion of his estate.

The courts have been confronted with the construction of wills in some respects similar to the one under consideration and they have brought to their aid certain rules of construction of wills. We now refer to the words of the will "household furniture and chattel property." However this may be, we are convinced from the words of the will that it was the intention of the testator to bequeath to the complainant his household furniture and chattel property contained in his home. The phrases of the will, "now at #204 Ellis Street, Peoria, Illinois," and "but wheresoever the same may then be situated" refer to the situation of the home of the testator. The words "now" and "then" it seems to us refer clearly to the place or situation of the testator's home. The will was evidently written by a person not unskilled in using words and drafting wills. In the third clause of his will, the testator bequeathed to his daughter, "my victrola,

now situated in my home, but wheresoever the same then may be." We believe that we have construed the meaning of the words used by the testator in the fourth clause of his will according to their evident meaning and not merely from their style and manner of expression.

The testator having confined the legacy of the fourth clause of household furniture and chattel property to that contained in his home, we do not feel warranted in extending or enlarging this legacy under the presumption against partial intestacy to include such property not contained in his home, although the will does not contain a residuary clause.

A will speaks as of the time of the testator's death, unless controlled by a manifest intention of the testator to the contrary. *Downing v. Grigsby*, 251 Ill. 568. The first clause of the will bequeaths to the daughter "all solid silverware of which I may be seized and possessed at the time of my death"; the fourth clause contains the phrase, "unless otherwise disposed of." Attention is also called to the provision of the fourth clause. We are clearly of the opinion that it must be held that the will of the testator speaks as of the time of his death.

The testator intentionally confined the legacy of his household furniture and chattel property to that contained in his home. We cannot prevent intestacy by supplying or reading an omission in a will. *Foss v. State Bank & Trust Co.*, 343 Ill. 94. It does not appear from the evidence in the case that any choses in action of the testator, and which the complainant claims as included in the words, "chattel property" used in the fourth clause, were in the home of the testator at the time of his death. Consequently, in the present state of proof, all of the testator's choses in action must be considered as intestate personal estate.

The sole purpose of the bill in this case is to secure a construction of the will to determine if the terms of

the will bequeath to the complainant only the choses in action of the testator which were in his home at the time of his death or if the will bequeaths to the complainant all of the testator's choses in action regardless of where the tangible, visible securities and instruments of debt were at the time of his death. There is no proof in the record what choses in action, if any, or their description, nature or value, were in the home of the testator at the time of his death. There is not a present necessity for a further construction of the will than has been given herein. There is no proof of what personal property is now in the possession of the executors of the will which is included in the terms of the will and on which it can take effect. *In re Harden's Estate,* 150 N. Y. S. 743; *Thompson v. Remsen,* 58 N. Y. S. 424; *Nicklin v. Downey,* 101 W. Va. 320, 132 S. E. 735; *Rothgeb v. Mauck,* 35 Ohio St. 503; *Woods v. Fuller,* 61 Md. 457.

The appellant contends that under Rule 35 of the Supreme Court the appellees are in default, and the decree should be reversed *pro forma* on the call of the docket. The appellees failed to join in the notice of appeal. The same contention was made in the case of *Eick v. Eick,* 277 Ill. App. 329, and the Appellate Court of the First District held against the contention. Furthermore, section 76 of the Civil Practice Act, Cahill's St. ch. 110, ¶ 204, provides as follows: ''(2) An appeal shall be deemed perfected when the notice of appeal shall be filed in the lower court. After being duly perfected no appeal shall be dismissed without notice, and no step other than that by which the appeal is perfected shall be deemed jurisdictional.'' The failure of the appellees to join in the appeal does not deprive this court of jurisdiction over the subject matter of the suit. It would be a strange situation if this court were bound by Rule 35 to reverse a decree of a lower court which is right and correct.

The chancellor in the decree construed the will of John H. Markley, and the final paragraph of the decree is as follows: "It is further ordered that the said bill of complaint herein should be and is hereby dismissed for want of equity." Where a bill is filed to construe a will the court should not first construe the will and then dismiss the bill for want of equity. *Hampton v. Dill*, 354 Ill. 415.

That part of the decree that construes the will of the said John H. Markley is hereby affirmed. That part of the decree that dismisses the bill for want of equity is hereby reversed.

*Affirmed in part and reversed in part; costs of appeal against the appellant.*