**Corene Cowdery, Appellant, v. Northern Trust Company et al., Appellees.**

**Gen. Nos. 42,757, 42,758.**

(O'Connor, P. J., specially concurring.)

Heard in the first division of this court for the first district at the October term, 1943. Opinion filed January 24, 1944. Rehearing denied February 8, 1944.

AIKEN, McCURRY, BENNETT & CLEARY, of Chicago, for appellant; CHARLES R. AIKEN, of Chicago, of counsel.

GORDON, BUCKLEY & EDMONDS, of Chicago, for certain appellee; THOMAS S. EDMONDS, of Chicago, of counsel.

DEFREES, FISKE, O'BRIEN & THOMSON, of Chicago, for certain other appellees; VINCENT O'BRIEN and VIRGIL C. LUTRELL, both of Chicago, of counsel; DONALD DEFREES, of Chicago, of counsel on rehearing.

BULLINGER, MICHELS & DICUS, of Chicago, for certain other appellee.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

* This is a consolidation of two appeals taken to the Supreme Court and by it transferred to this court. (383 Ill. 75.)

The plaintiff, Corene Cowdery, appealed from a decree which dismissed her complaint for the construc-

tion of two trusts—an insurance and a testamentary trust created by her father, Edward G. Cowdery—but granted part of the relief sought by her. She later appealed from a supplemental decree, entered after the first appeal had been perfected, fixing solicitors' fees and expenses of certain defendants and charging same against the principal or income of the trust funds created for her benefit. On the second appeal her brother, Chester V. Cowdery, filed a cross-appeal attacking the charging of the fees of the guardian *ad litem* appointed for him and a part of the fees of the guardian *ad litem* for certain minors and trustee for persons not in being against the trust fund established for his benefit.

July 20, 1926 Edward G. Cowdery created the insurance trust by assigning to the Northern Trust Company, as trustee, five insurance policies on his life totaling $125,000, to distribute the net income therefrom during the lifetime of his widow, Jennie Van Fleet Cowdery, one half to the widow and the remaining one half in equal shares to his daughters, Louise M. Willard and plaintiff, and upon the death of the widow to divide the entire trust estate into two parts as nearly equal as practicable, to transfer and deliver absolutely one of said parts to Louise M. Willard and to retain the remaining part as a trust fund and pay the net cash income therefrom to plaintiff during her lifetime.

September 19, 1929 he executed his will devising the whole of his estate, except certain small bequests, to the Northern Trust Company, as trustee, to distribute the net income therefrom during the lifetime of the widow as follows: To Chester V. Cowdery, his son, $200 per month until he shall attain the age of 40 years, $416.67 thereafter until he becomes 50 years of age, and thereafter the income from a trust fund not exceeding $200,000; the remainder of the income to the widow; upon her death the trustee was directed to

promptly set up a trust fund of $200,000—or an amount equal to one third of the aggregate principal of the insurance and testamentary trusts if one third of both trusts should be less than $200,000—and out of the income to pay Chester like sums, dependent on his age, as the trustee was directed to pay him during the lifetime of the widow; to promptly divide the remainder of the trust estate (called the residual trust estate) into two shares as nearly equal as practicable; to convey and deliver absolutely to Louise M. Willard one of said shares, to retain the remaining share as a trust fund and pay the net income thereof to plaintiff during her lifetime.

In addition the trust instruments contained substantially similar provisions for the disposition of principal and income in the event of the death of the respective beneficiaries, as well as substantially similar spendthrift clauses and directions to the trustee in the event any of the beneficiaries should be a minor or under disability. Advisors to the trustee were appointed for each trust and the trustee was prohibited from investing trust funds or disposing of trust assets without the consent or direction of the majority of the living advisors, unless they failed or refused to give consent or direction within 60 days after written request by the trustee.

Edward G. Cowdery died January 13, 1932. His widow died February 2, 1941. At that time the two trust estates exceeded $1,000,000. By March 8, 1941 the trustee had set up a trust fund of $200,000 for the benefit of Chester and had completed plans for the division of the insurance trust fund and the residual trust estate under the testamentary trust, and by March 10 had physically segregated the securities (except securities not exceeding $25,000 in value, then not divisible) and mailed to Louise M. Willard the necessary document to obtain her receipt for her share of the trust funds. Final division was made shortly after

this suit was started. None of the parties object to the final division made by the trustee.

March 11, 1941 plaintiff, not being informed as to the action of the trustee in dividing the trust funds, filed her complaint for construction of both trust instruments, making defendants thereto the Northern Trust Company, as trustee, Louise M. Willard, individually and as advisor under the insurance trust (and by amendment, as executrix of the last will and testament of the widow), Charles B. Willard, husband of Louise M. Willard, as advisor under both trusts, Chester V. Cowdery, alleged on information and belief to be incompetent, and other persons having only contingent interests. In this complaint plaintiff charges that the trustee had promulgated a number of fair, equitable and reasonable plans for establishing the trust fund of $200,000 for Chester, and for an equitable and equal division of the remaining securities between itself as trustee for the benefit of plaintiff and Louise M. Willard; that plaintiff is informed and believes Louise M. Willard had rejected each of these plans and threatened to hold the trustee responsible for any declines in the market values of the securities to which she may be ultimately entitled because of any delay in the division of the trust estates; that the widow, Louise M. Willard and Charles B. Willard were appointed as advisors to the trustee under the insurance trust, and the widow, Willard and plaintiff were appointed as advisors under the testamentary trust; that the widow was deceased and the remaining two advisors under each trust were acting; that there was great personal animosity between plaintiff and Willard and that he as advisor had arbitrarily refused to consent to the sale of certain securities which could not be divided equally, and thereby effectively and without reason prevented the trustee from making an equitable and reasonable division of the trust estates

in accordance with the intent of the settlor; that substantial sums of money were in the hands of the trustee, representing income accrued from the principal of the trust estates during the lifetime of the widow and not distributed during her lifetime; that Louise M. Willard has demanded of the trustee that these sums be paid to the estate of the widow.

Plaintiff asked instruction of the court (1) as to the manner in which the trustee is to make an equitable division of the trust estates, including those items which could not be equally divided, (2) as to the manner in which the trustee is to promptly make sales of trust securities and promptly invest trust funds, the trust instruments prohibiting such action by the trustee without the consent of a majority of the advisors, and (3) as to whether the accrued but undistributed income in the hands of the trustee at the death of the widow is the property of the widow's estate, or of the trust estates and subject to division between Louise M. Willard and the trustee for the benefit of plaintiff.

April 15, 1941 a petition on behalf of Chester was filed by his attorneys, alleging that Chester is a resident of the State of New York, that plaintiff on March 26, 1941 had instituted proceedings in the probate court of Cook county to have Chester declared incompetent and a conservator appointed for his estate; that the proceeding was being contested. The petition submitted to the court the appointment of a guardian *ad litem* for Chester in this suit. May 6, 1941, on the petition of Chester and motion of plaintiff under the prayer of her complaint, a guardian *ad litem* was appointed for Chester, the order reciting that the appointment was not to be construed as an adjudication of the incompetency of Chester, and a guardian *ad litem* for certain minor defendants and trustee of the interests of the issue not in being of plaintiff, Louise M. Willard and Chester was appointed. There-

after Chester participated in the suit with double representation of a guardian *ad litem* and counsel of his own choosing.

The trustee in its answer denied that plaintiff was entitled to any relief other than instruction of the court as to the distribution of the accrued and undistributed income at the time of the death of the widow. Later it filed a counterclaim specifying particular instances arising after the institution of the suit when the advisors had failed to agree or one of them had failed to consent or direct the trustee, and asked for instructions of the court in the situations presented. An amendment and supplement to this counterclaim was filed alleging the institution of proceedings in Cook county and in New York to determine the competency of Chester and notwithstanding its belief that Chester is competent to receive the income from the trust, asking instructions of the court as to the competency of Chester and as to whether the income from the trust fund created for Chester's benefit should be paid to him or expended for his benefit under the provision of the will relating to a beneficiary under disability, and also praying that the court reserve jurisdiction for the purpose of advising the trustee from time to time as to the disposition of the income.

Louise M. Willard and Charles B. Willard filed joint and several answers denying the charges made against them in the complaint and insisting that plaintiff's request for instructions of the court is frivolous, except as to the accrued and undistributed income at the time of the death of the widow, and that the possible interest of plaintiff in that income is so small that she should not be permitted to charge to the trusts the expense of any proceeding in regard to it; that Louise M. Willard, as executrix, was entitled to such income. Later Louise M. Willard filed a counterclaim asking that this income be paid to her, but subsequently withdrew it.

Chester by answer denied that he was incompetent or that a guardian *ad litem* should be appointed for him. In a counterclaim he again averred his competency; alleged that plaintiff had instituted a proceeding in the probate court of Cook county to have him declared incompetent and a conservator appointed for his estate, which was dismissed on her motion and costs assessed against her; that she also instituted a proceeding in the State of New York; that these proceedings were brought to harass him; that she had threatened to file other litigation involving his competency and the testamentary trust. He prays that the court determine his competency, that the guardian *ad litem* be discharged, that plaintiff and all other parties hereto be forever restrained and enjoined from filing or prosecuting any proceedings to determine his competency, except in this proceeding, and that the court retain supervisory jurisdiction of all matters pertaining to the trust fund for his benefit, and for further relief.

Plaintiff answered the counterclaim, questioning the jurisdiction of the chancery court to determine Chester's competency, admitting the institution of proceedings in the probate court of Cook county, stating that same was dismissed because of Chester's objection to the jurisdiction, admitting that proceedings were begun in New York but alleging that Chester fled the jurisdiction of that State so that a hearing could not be had, denying threats to institute further proceedings and setting up facts purporting to justify her conduct in other litigation mentioned in Chester's counterclaim but which appears to have no relevancy to this suit.

On a hearing before the court and a jury, in which plaintiff, standing on her objection to the jurisdiction of the court, refused to participate, Chester was found to be competent and capable of managing and caring for his own affairs. This was followed by a hearing

on the issues as to the construction of the will, at which the only witness was an officer of the trustee, who was first called by plaintiff for cross-examination and later as a witness on behalf of the trustee. May 25, 1942 a decree was entered finding the equities to be with the defendants and counterclaimants and dismissing the complaint as amended for want of equity. By this decree the court determines that the accrued and undistributed income as of February 2, 1941, the date of the death of the widow, after deducting certain fees and expenses allowed to the trustee, should be paid over to Louise M. Willard as executrix of her mother's will, gives directions to the trustee as to trust assets as to which the advisors had not agreed, finds that Chester was, on March 11, 1941 and at the date of the decree, mentally competent and capable of managing and caring for his own affairs and directing the trustee to pay to him the net income which from time to time he is entitled to receive under the testamentary trust, discharges the guardian *ad litem* for Chester, restrains and enjoins the parties to the proceeding from instituting or maintaining any proceeding relating to the competency of Chester or his right to collect the income from the trust established for his benefit unless leave of court should first be obtained, and retains exclusive jurisdiction to determine any such matters that may arise in the future. The court also retained jurisdiction to entertain and determine petitions, if any, of the parties, their counsel, guardians *ad litem* and the trustee of interests of persons not in being, in respect to expenses, including compensation for services—such petitions, if any, to be filed within 10 days.

From this decree plaintiff appealed, denying jurisdiction of the superior court to hear and determine Chester's competency and its power to permanently enjoin the parties from causing inquiry to be made into Chester's mental condition in the future and to

retain exclusive jurisdiction of that matter, denying the right of the court to construe the will as to any matter urged in the complaint and at the same time dismiss the complaint for want of equity. Plaintiff also argues that the court should have determined that the accrued and undistributed income in the hands of the trustee at the death of the widow belonged to the trust estate. .

June 4, 1942 plaintiff filed her notice of appeal from the decree, and defendants acknowledged receipt of a copy of such notice. On the same day the trustee, Chester and his guardian *ad litem* filed petitions for the allowance of attorneys' fees and expenses. On the following day the remaining defendants, the guardian *ad litem* for certain minors and trustee for persons not in being, filed petitions for similar allowances. On the hearing of these petitions, plaintiff, objecting to the jurisdiction of the court to proceed after the appeal from the original decree had been perfected, did not cross-examine any of the witnesses or offer any evidence. July 31, 1942 a decretal order or supplementary decree was entered fixing and allowing fees and expenses, including attorneys' fees, to the trustee, Louise M. Willard, individually and as executrix of the last will of her mother, Chester, the guardian *ad litem* of Chester, and the guardian *ad litem* for certain minors and trustee for persons not in being, and charging the greater part of such fees and expenses to the principal and income of the trust funds for plaintiff's benefit. An appeal from the supplemental decree was perfected. On that appeal plaintiff denied the jurisdiction of the court to determine the matter of fees and expenses after perfection of the first appeal, and also attacked the allocation or charge of the allowances made. Chester cross-appealed, attacking the charging of allowances to the guardians *ad litem* and the trustee for persons not in being against the trust fund established for his benefit. These appeals were taken by

plaintiff to the Supreme Court on the theory that, the court being without jurisdiction to determine the competency of Chester or to fix and allow the fees and expenses after the first decree had been perfected, a construction of the constitution was involved and plaintiff's constitutional rights violated. The appeals were consolidated in the Supreme Court and later transferred to this court.

Chester's competency first became an issue in this case when plaintiff alleged his incompetency and the need for a guardian *ad litem*. He denied the allegations and in his counterclaim asked the discharge of the guardian *ad litem,* who had been appointed without a finding of incompetency. Where there has not been a judgment fixing the mental status of the person alleged to be incompetent, the court necessarily has the power to determine all facts essential to a proper adjudication upon the need for such guardian. This is fundamental. As said in *Dodge v. Cole,* 97 Ill. 338, 358, "The very act of establishing a court, by implication confers upon it such powers, not expressly given, as are necessary to the efficient transaction of all such business as it is by law authorized to perform." *Cowdery v. Northern Trust Co.,* 383 Ill. 75. In *Pyott v. Pyott,* 191 Ill. 280, the guardian *ad litem* of the defendant in a separate maintenance suit filed a cross-bill to annul the marriage on the ground of the mental incapacity of his ward to assent to the marriage; objection was made, as here, that the chancery court was without jurisdiction to adjudicate as to the sanity of the cross-complainant. The court said (289): "The position of counsel seems to be, the issue of insanity having been raised by the pleadings the circuit court should have suspended further proceedings, and directed an inquisition, in conformity to the common law or under the provisions of chapters 85 or 86 of the Revised Statutes of the State of Illinois, should be had and taken and the sanity of said Mr. Pyott, Sr., deter-

mined and the result certified to the circuit court, . . . When the mental capacity of a party to a proceeding arises for determination as an issue in a case in chancery, (other than bill to contest a will,) the better practice is to cause the question of sanity to be submitted to a jury for an advisory verdict; but the court is not without jurisdiction to hear and determine the question without a jury, . . ."

On the appointment of a guardian *ad litem* the question to be determined is the capacity of the person whose fitness is challenged to intelligently choose counsel and consult and advise with him in the conduct of the litigation, or, capacity to manage and care for the particular business or matter involved. Here the jury was required to determine whether Chester was, at the commencement of the suit and continuously since, to and including the day of the sanity hearing (a period of more than a year), mentally competent and capable of managing and caring for his own affairs. The question submitted was proper, but if it imposed too high a standard plaintiff cannot complain of this or of the ultimate finding of mental competency. In view of the history of Chester appearing in the record, it was the duty of the plaintiff to suggest his incompetency and offer all proof of the matter reasonably available. Having made the suggestion of incompetency she is in the position of a petitioner in a sanity hearing in the county or probate court under the statute. She is not a party aggrieved who is permitted to appeal. *Sanborn v. Carpenter,* 140 Wis. 572; *Harmon v. Harmon,* 141 Tenn. 64. Nor does the remote possibility of liability under the statute for Chester's support, suggested by counsel, create an appealable interest. In *Nimblet v. Chaffee,* 24 Vt. 628, involving an appeal from a sanity hearing, the court said: "But it is to be borne in mind, that the expectancy of an heir, or the apprehension of being ultimately compelled to maintain a lineal ancestor or de-

scendant, is no present vested interest, which the law can recognize.''

However, she has an appealable interest in that part of the decree which restrains the parties to this suit from instituting or maintaining any proceeding relating to the competency of Chester unless leave of court is had, and which retains exclusive jurisdiction to determine that question in the future. This provision opens up the much broader question of the right of a court of chancery to adjudicate generally upon the sanity of a person for the purpose of commitment or appointment of a conservator of the person or property. By the common law the power of control over the persons and property of lunatics and idiots belonged to the king as *parens patriae* and was exercised by him through the lord chancellor, not in his character of chancellor or by virtue of the general powers of the chancery court, but under a separate and distinct commission under the sign manual from the crown. The chancellor, upon petition or information, granted a writ to inquire into the party's mind and, if found *non compos,* generally committed the care of his person to some friend, called the committee, and the management of his estate to an heir, designated as committee of his estate. Errors in these proceedings were redressed by writ of error in the regular courts of law and not in the House of Lords as on appeal from a court of equity. After adjudication the chancellor acted in the superintendence of the lunatic's custodians or committee by virtue of his general equity powers. In this country the State succeeded to the power of the king as *parens patriae,* and under our form of government the power is exercised by the courts only through legislative enactment. *Dodge v. Cole,* 97 Ill. 338, 354, 355; *Dowdall v. Hutchens,* 263 Ill. App. 275, 280–282; *Sporza v. German Savings Bank,* 192 N. Y. 8; Pomeroy's Eq. Jur. (4th ed.) vol. 3, secs. 1311–1313; Story's Eq. Jur. (14th ed.) secs. 1786–

1788; Cooley's Blackstone (4th ed.) vol. 1, secs. 303–305, vol. 3, sec. 427. In Illinois the constitution (art. 6. sec. 12) gives the circuit court "original jurisdiction of all causes in law and equity . . ." The superior court has the same jurisdiction. *Dwyer v. Dwyer,* 366 Ill. 630. This jurisdiction is the jurisdiction "held and exercised by the English court of chancery by virtue of its general powers as a court of justice, and it does not include that special authority or jurisdiction delegated to the chancellor, individually, as a representative of the crown in its capacity as *parens patriae.* This latter authority, so far as it exists at all, is possessed only by the state legislatures." Pomeroy's Eq. Jur. (4th ed.) secs. 284, 285.

By section 18 of article 6 of the constitution our county courts are given original jurisdiction in the appointment of guardians and conservators and the settlement of their accounts. Like jurisdiction is given the probate courts under section 20 of the same article. By chapters 85 and 86 of the Illinois Revised Statutes, as they existed when the decree was entered, jurisdiction over the person of insane persons not charged with crime was vested in the county courts. It appointed conservators of the person and the probate court appointed conservators of the property of the incompetent. In considering these constitutional and statutory provisions this court in *In re Estate of Reisenhus,* 294 Ill. App. 71, 76, said: "These provisions of the constitution and statutes, as we construe them, disclose an intention of the legislature that in a county where a probate court has been organized, that court shall have exclusive jurisdiction to appoint conservators of the property of the insane while the county court shall have exclusive jurisdiction over their persons." The present statutes disclose a like intention to retain jurisdiction over sanity hearings for the purpose of commitment, or the appointment of conservators in the county and probate courts. Ill.

Rev. Stat., ch. 91½, secs. 1–17 [Jones Ill. Stats. Ann. 77.038(1)–77.038(17)]; ch. 3, secs. 112–122 [Jones Ill. Stats. Ann. 110.361–110.371]. The jurisdiction of chancery to determine questions of sanity is restricted to those cases in which determination of the mental condition of a person is necessary in the exercise of equity jurisdiction, as in the *Pyott* case, the contest of wills or appointment of guardians *ad litem* for parties in pending cases.

Chester defends that part of the decree which restrains the parties from instituting or maintaining any proceedings relating to his competency by asserting the inherent right of the court to protect itself and litigants from a multiplicity of actions and harassing and vexatious litigation over the same subject matter. *Patterson v. Northern Trust Co.,* 286 Ill. 564. He offered no evidence in support of the charges in his counterclaim that plaintiff maliciously and with intention to harass and injure him instituted proceedings in Cook county and in the State of New York involving his competency; that plaintiff by dilatory tactics had delayed the hearing in Cook county and had threatened to file other litigation involving his competency. Plaintiff denied each of the charges and, asserting her good faith, alleged that the proceedings were instituted to protect Chester.

It appears from the sworn answer of plaintiff to the counterclaim and the exhibits attached to and made a part thereof (without traverse in Chester's reply) that Chester is a mental defective who never finished grammar school; that from the age of 34 to 46 he was an inmate or student in an institution in New York chartered to permit the harboring of mentally deficient children, and paying for his accommodations and care $250 per month; that in the institution he was under the supervision and guidance of Rudolph S. Fried, owner and manager, and was raising poultry, painting sheds and buildings, taking care of the lawn

and doing anything he wanted to do; that in the proceedings for the probate of his father's will in 1932 a guardian *ad litem* was appointed for him (admitted by counsel); that after the institution of the proceedings in Cook county for the appointment of a conservator Chester's attorneys served notice for the taking of depositions of certain persons, including Fried in New York; that Fried was not produced as a witness, and representations were made that he would testify in the hearing in Cook county; that later plaintiff's counsel was advised that Fried would not appear in the probate court of Cook county; that plaintiff then asked for a continuance to take Fried's deposition; that Chester filed a petition in the Cook county proceedings attacking plaintiff's right to institute the proceedings because of her lack of residence and alleging that he, Chester, was a resident of the State of New York and that he had no property except the income from a testamentary trust which contained a spendthrift clause and further provided that in the event any beneficiary was under a disability the trustee ''shall itself expend the income so payable . . . to any such person under disability in whatever way the Trustee shall think best for his . . . support, maintenance and/or education instead of making payment thereof . . . to a legally appointed conservator of such person under disability''; that plaintiff then filed a motion alleging her residence in Chicago, admitting Chester's residence in New York and asking dismissal of the proceeding for want of jurisdiction because of the nonresidence of the respondent; that the proceeding was dismissed at plaintiff's cost; that proceedings were instituted in New York by service of a writ on Fried to produce Chester before the court for examination; that on receipt of this writ Fried called Chester's attorneys in Chicago, who requested that Chester call them back; that Fried, knowing that Chester was leaving, went to New York City and had not

seen Chester since; that the New York proceeding was dismissed later without prejudice.

Within a week after Chester fled from the jurisdiction of the New York court his counterclaim in this suit requesting the adjudication of his sanity was presented and leave to file was granted several months later. In the sanity trial Fried was not produced as a witness; Chester's history as outlined above was not presented to the jury; only witnesses with extremely limited observation of Chester were examined and—plaintiff refusing to participate even by cross-examination because of her erroneous objections to the court's jurisdiction—Chester was pronounced sane in a *pro forma* hearing. For this result plaintiff is very much to blame. The facts outlined, however, justified the institution of proceedings to determine Chester's competency and further show that Chester evaded trial in the probate court of Cook county by keeping Fried unavailable as a witness and by injecting facts which suggested a want of jurisdiction, and that he fled from the State of New York to escape a trial where the jurisdiction could not be questioned and where Fried could have been compelled to testify. These facts do not bring this case within the *Patterson* case, relied upon by Chester. In that case, as shown in *Shedd v. Patterson,* 302 Ill. 355, Patterson had brought five suits in equity and four actions at law, all relating to the same subject matter; the later cases, including that reported in *Patterson v. Northern Trust Co.,* 286 Ill. 564 (where the court mentions the commencement of his fifth suit), treated prior decisions of the court as mere nullities and sought to relitigate matters decided adversely to Patterson in the trial courts and on appeal. Here there had been no prior adjudication upon Chester's competency and he himself had thwarted hearings in the proceedings brought for that purpose. The provision of the decree restraining the parties to this suit from institut-

ing or maintaining any proceedings relating to Chester's competency without leave of court being had, and retaining exclusive jurisdiction to determine his competency, is erroneous.

Notwithstanding a serious doubt as to the right of the court to retain jurisdiction for the purpose of instructing the trustee as to the manner of expending income payable to Chester (*Tudor v. Firebaugh,* 303 Ill. App. 452, 461; *Warner v. Mettler,* 260 Ill. 416), we make no reference to that part of the decree. The trustee and Chester, the parties in interest, do not complain, and plaintiff cannot complain for them.

Plaintiff asks the instruction of the court as to three separate matters, one of which relates to the ownership of the undistributed income in the hands of or owing to the trustee at the death of the widow. The trustee and Louise M. Willard by their answers admitted that instruction on this point was necessary. Later, Louise M. Willard, as executrix of the last will of the widow, filed her counterclaim asking for such instruction, but withdrew it. The court construed the trust instrument as to this income and at the same time dismissed the complaint for want of equity. This was error. *Hampton v. Dill,* 354 Ill. 415; *Guerin v. Guerin,* 270 Ill. 239; *Markley v. McCulloch,* 280 Ill. App. 24. The setting up of the trust fund of $200,000 for the benefit of Chester and the equitable division of the residual trust estate between Louise M. Willard and the trustee, as trustee for the benefit of plaintiff, were practically completed when the complaint was filed and fully completed before the decree was entered, except as to certain worthless assets, so that no instruction was needed in respect to that matter.

The request for instruction as to the rights and duties of the trustee in the event of disagreement between Willard and plaintiff as advisors, or the failure of one of them to give consent or directions on request of the trustee, was made prematurely because the mat-

ters as to which instruction was asked had not arisen. *Warner v. Mettler*, 260 Ill. 416, 420, 421. As shown by the trustee's counterclaim and the evidence, they did arise shortly after the original complaint was filed. The court properly acted upon the counterclaim rather than the complaint in respect to this matter. The record shows misconception of some of plaintiff's legal rights and remedies, but does not justify charges of bad faith in bringing suit. The trustee's representative testified that plaintiff made no objection to the division of the estate as finally determined by the trustee, and there is no evidence of arbitrary or obstructive conduct on her part as beneficiary or advisor.

The court decreed that the income involved became the property of the widow's estate and directed the trustee to pay it to the executrix. Plaintiff claims this income should be divided equally between the trustee, as trustee for the benefit of plaintiff, and Louise M. Willard, individually. Each of the parties contending for this income cite and quote Scott on Trusts in support of their claim. In speaking generally of trusts the author says (sec. 238): "Where the income under a trust is payable to a beneficiary for life, he or his personal representative is entitled to the net income accruing up to the time of his death, unless it is otherwise provided by the terms of the trust. This is true even though by the terms of the trust it is provided that the income shall be payable to him at designated intervals and he dies between such intervals. . . . On the other hand, the life beneficiary or his estate is not entitled to income accruing after the time of the last payment and prior to his death, if the settlor has provided, whether in express terms or otherwise, that he shall not receive the income unless he is living at the dates fixed for payment." Speaking specifically of the death of a beneficiary of a spendthrift trust the author says (sec. 158.1): "Even

though it is provided by the terms of the trust or by statute that the interest of the beneficiary shall not be transferable by him or subject to the claims of his creditors, the beneficiary's interest in such accrued income passes on his death to his personal representatives, if it would so pass in the absence of such a restraint on alienation. The purpose of the restraint on alienation is to protect the beneficiary, and when he dies he no longer needs such protection. The purpose is not to deprive the beneficiary's estate of the income which was payable to him but which had not been paid at the time of his death. Whatever is thus received by the personal representatives is a part of his estate and is subject to the claims of his creditors. Unless the claims of creditors preclude it, the beneficiary can dispose by will of his right to the income accruing up to the time of his death. . . . The personal representatives of the beneficiary of a spendthrift trust are not, of course, entitled to the income accruing up to the time of his death if it is otherwise provided by the terms of the trust.'' The spendthrift clauses in the insurance and testamentary trusts are identical and, so far as they relate to income, are as follows: ''I hereby further direct that . . . all payments of net cash income from . . . my Trust Estate and/or said respective Trust Funds or any share or part thereof to the respective beneficiaries thereof hereunder shall be made to such beneficiaries in person or upon their personal receipt; and I hereby further direct that none of the beneficiaries of my Trust Estate or of said respective Trust Funds or of any share or part thereof shall have any power . . . to encumber or anticipate the income therefrom or any part thereof, nor shall any such beneficiary have any control over said income or any part thereof until after the actual receipt thereof by such actual beneficiary thereof hereunder; and none of the

income arising therefrom *shall ever at any time or in any part* be subject to the claims of creditors of the respective beneficiaries thereof." (Italics ours.)

Whatever may be the purpose, generally, of restraint on alienation in spendthrift trusts, the terms used in the trust herein involved go further than mere protection of the beneficiary during his lifetime. They exclude control of such income by any beneficiary until same is actually received by the actual beneficiary, not his or her representative, and bar claims of creditors after, as well as before, the death of beneficiaries. When the settlor directed that none of the income arising from his trust estate or the respective trust funds, or any share or part thereof, shall "ever at any time or in any part be subject to the claims of creditors of the respective beneficiaries," he precluded the passing of any part of that income to the estate of any beneficiary. The purpose of the settlor was similar to that of the testatrix in *Routt v. Newman*, 253 Ill. 185. Caroline Newman devised certain real estate to Routt, as trustee, to pay the income to her four sons—one fourth to each in person, and not upon any written or verbal order or upon any assignment or transfer by either or any of her sons; the trust was to continue until all her sons were deceased, and upon the decease of any son during the continuance of the trust, his share of the remaining income went to his child or children during the continuance of the trust; upon the decease of any son leaving no child or widow surviving, his share was to be equally divided among the remaining sons during the continuance of the trust; the income payable to a child or widow of a deceased son was to be paid to him or her "in cash and in person into their hands, and not to be paid upon any written or verbal order nor upon any assignment or transfer by any such person." After the death of the testatrix two sons died, leaving no child or widow; a third child died, leaving Charlotte

Newman, his widow, and one child, Richard W. Newman, who died at the age of 13 years, leaving his mother as his only heir; the fourth son of the testatrix still surviving, Charlotte Newman claimed the income theretofore payable to her son. After quoting the foregoing provisions as to the manner of payment of income to Richard W. Newman, the court said (189, 190): ''The continued existence of the recipient of the fund was necessary to a compliance with this requirement. The portion of testatrix's property included in the trust was manifestly intended to be placed beyond the reach of creditors of the beneficiaries, and that object was an important part of her scheme. She gave other property to her sons in fee simple, but the control of this portion she intended should be so restricted that neither the land itself nor the income could be reached by any creditors during the lifetime of any of her sons. . . . If the payment to her (Charlotte Newman's) son does not terminate with his death, then such payment must be made to an administrator, who would then be the recipient under the terms of the trust, and would administer the sum received from the income, together with all the assets of the estate, according to law, and pay it, without restriction, to the persons entitled to receive it. It happens that the son here died during his minority, but this cannot affect the character of his interest. Had he been an adult, able to contract debts, the effect of the continuance of the payment of the income after his death would have been to subject the income to the payment of his creditors. This would be a manifest perversion of the intention of the testatrix, by the creation of the trust, to prevent this very thing.'' So in the present case, payment of the income in dispute to the testatrix of the widow is to subject that income to the payment of the widow's creditors, if any, and is a manifest perversion of the settlor's intention to prevent income of the trust es-

tate or trust funds created by him *ever at any time or in any part* being subject to the claims of the creditors of the widow. *First Nat. Bank of Chicago v. Cleveland Trust Co.,* 308 Ill. App. 639. The accrued income in the hands of the trustee should be divided by it in equal parts between itself, as trustee for the benefit of plaintiff, and Louise M. Willard, individually.

On the 10th day after the entry of the original decree plaintiff filed notice of appeal, with acknowledgment of service by the defendants, thereby perfecting the appeal. Civil Practice Act, sec. 76 [Jones Ill. Stats. Ann. 104.076]. On the same and the following day petitions were filed by the defendants, guardians *ad litem* and the trustee for persons not in being, for the allowance of fees and expenses. On the hearing of these petitions plaintiff objected that because of the appeal the court was without jurisdiction to determine and tax the fees and expenses. The trustee likewise objected to the jurisdiction of the court. These objections were overruled and fees and expenses exceeding $12,000 were allowed, the greater part being taxed against the principal and income of the trust for the benefit of the plaintiff. On appeal plaintiff again urges the lack of jurisdiction.

Defendants, including the trustee (forgetting its position in the trial court) argue here that the original decree is not a final and appealable order, and that in any event the proceedings in respect to the fees and expenses were not stayed by the appeal because the appeal has not been made a supersedeas. In support of their contention that the original decree is not a final and appealable order defendants rely principally upon *Walters v. Mercantile Nat. Bank of Chicago,* 380 Ill. 477. In that case the complaint was filed for the construction of a will and an insurance trust as to a number of disputed matters. The order appealed from construed only one section of

the will and provided ''that the remaining questions involved in the construction of said Last Will and Testament should be and they will be disposed of by this Court in a decree to be presented to this Court at a later date.'' The Supreme Court said (485): ''Such an order is not a final decree from which an appeal may be prosecuted. A decree is final and appealable only where it terminates the litigation between all of the parties on the merits so that when it is affirmed the court below has only to proceed with its execution. The only exception is that a decree may be final and appealable even though incidental matters may be reserved for consideration and it directs a master to state an account. (*Free v. The Successful Merchant,* 342 Ill. 27.) . . . In this case the decree determined the rights of plaintiffs as against appellant, only. It left for future consideration all questions raised as between the plaintiffs and all other parties.'' In *Bennett v. Weber,* 323 Ill. 283, 293, the court, in denying a motion to dismiss an appeal, said: ''A final decree is not necessarily the last order in a case, for orders sometimes follow for the purpose of carrying out the decree. When a decree finally fixes the rights of the parties it is final and may be reviewed on appeal or writ of error. (*Allison v. Drake,* 145 Ill. 500; *Klein v. Independent Brewing Ass'n,* 231 id. 594; *DeGrasse v. Gossard Co.,* 236 id. 73.)''

The decree in the present case bears no resemblance to the *Walters* decree. This decree construed the trust instruments as to all matters raised in the complaint and the counterclaim and dismissed the complaint for want of equity. It therefore terminated the litigation between all of the parties on the merits. If it did not, the petitions for fees and expenses have been filed prematurely. The taxing of fees and expenses relates solely to the costs, and no order in respect to these costs can affect the substantive rights of the parties fixed by the original decree. On the other

hand, reversal of that decree may have a controlling effect upon the allowance of fees or expenses and the fund or income against which they should be taxed.

Under the Civil Practice Act (sec. 74) the appeal constitutes a continuation of the proceedings in the court below and is perfected by filing a notice of appeal in the lower court. (sec. 76.) The appeal operates as a supersedeas only if and when the appellant shall give and file a bond. (sec. 82.) The appeal in this case has not been made a supersedeas. The effect of a supersedeas is to stay the enforcement of the judgment or decree brought to the reviewing court on appeal or writ of error. 3 Am. Jur., Appeal & Error, secs. 535, 536; *Simon v. Balasic,* 316 Ill. App. 442 (Abst.). Plaintiff is not seeking to stay the enforcement of either decree. Her objection to the action taken on fees and expenses is that the perfecting of the appeal, even though it was not made a supersedeas, divested the trial court of jurisdiction to make any further orders pending the appeal, granting relief to defendants or imposing any liabilities or burdens upon her as to costs. The present statute specifically says that the "appeal constitutes a continuation of the proceeding in the court below." It was so regarded under the former practice acts, which required a bond on every appeal and made every appeal a supersedeas. *In re Application of Glos,* 255 Ill. App. 567; *Hopkins v. Patton,* 257 Ill. 346. The present statute, in making an appeal a continuation of the proceeding in the court below, does not differentiate between appeals where bond is given and those in which there is no bond. Each are continuations of the proceedings in the court below. The same case cannot be before the trial and reviewing courts at the same time. *Steele v. Hohenadel,* 141 Ill. App. 201, 215. The jurisdiction of the Appellate Court attaches when the notice of appeal is filed. *Francke v. Eadie,* 373 Ill.

500. This ousts the jurisdiction of the lower court, even though no bond is filed on the appeal. In *Simon v. Balasic,* cited above, the court said: "It is elementary that after the notice of appeal (first appeal) was filed in the trial court, that court lost jurisdiction of the case and the jurisdiction of this court attached and continued until that appeal was disposed of. While the first appeal was pending in this court the trial court had no power to enter any order involving a matter of substance. The first appeal in and of itself stayed all further proceedings in the municipal court, . . . Said appeal by plaintiff was from an order vacating a default judgment theretofore entered in her favor, and as already said, all proceedings in the case were stayed upon the filing of the notice of appeal on the first appeal without said appeal having been made a supersedeas and without the filing of an appeal bond." In *German-American Sav., Loan & Building Ass'n v. Trainor,* 293 Ill. 483, dealing with the retaxing of a master's fee, the court said (489): "The original decree of the trial court being appealed to the Appellate Court, under the authorities the costs could not be retaxed pending the appeal. (15 Corpus Juris, 188.) Pending the appeal the circuit court was without authority to make any order affecting the interests of any of the parties or in any way affecting the costs. (*Merrifield v. Cottage Piano Co.* 238 Ill. 526, and cases cited.)" In considering the allowance of solicitors' fees in a divorce case pending an appeal, the court in *Jenkins v. Jenkins,* 91 Ill. 167, said: "In regard to the first point relied upon, were it not for sec. 15, chap. 40, R. L. 1874, page 421, we would have no hesitation in holding that appellant's position was well taken,—that after the appeal was consummated and the cause was removed to this court, the circuit court had no right to require appellant, by decree or otherwise, to pay attorney or solicitor's

fees; but the section of the statute referred to in plain and express terms confers the power upon the circuit court, and the law as enacted by the Legislature must control.'' There is no statute applicable to this case. The position of defendants is not aided by the reservation of the question in the original decree. In *People v. Pam,* 276 Ill. 181, the authority of the trial court to remove a receiver and place the property in possession of a defendant upon giving bond as provided by statute, after appeal had been taken, was considered. The court said: ''It is contended by relator that the decree expressly reserved jurisdiction in the circuit court to make further orders in relation to the receivership and the settlement of his accounts. . . . Neither could the paragraph of the decree referred to give the court authority to enter orders in the case after the appeal from the decree was perfected.'' The court being without jurisdiction to make any orders relating to the fees and expenses in question, the objections of plaintiff and the trustee should have been sustained.

The supplemental decree being a nullity, it is not necessary to consider any of the objections made to this decree.

The two decrees appealed from are reversed and the cause remanded for further proceedings in accord with this opinion.

*Reversed and remanded.*

Matchett, J., concurs.

O'Connor, P. J., specially concurs: I think we should have passed upon the propriety of the order of July 31, 1942, which decreed the payment of attorneys' fees, etc.