Harry L. Trugman, as Trustee, etc., et al., Plaintiffs-Appellees, v. Patricia Sylvia Klein, as Executor of the Estate of Bertram A. Klein, Deceased, et al., Defendants-Appellants, and Marjorie Gardner, et al., Defendants-Appellees.

Gen. No. 51,157.

First District, Fourth Division.

April 21, 1967.

Rehearing denied May 22, 1967.

Tenney, Bentley, Guthrie & Howell, of Chicago (Edwin H. Conger, of counsel), for appellants.

Fischel, Kahn, Weinberg, Diamond & Brusslan, of Chicago (Max H. Weinberg, of counsel), for defendants-appellees.

MR. JUSTICE DRUCKER delivered the opinion of the court.

This is an appeal from a decree construing the terms of a living trust established by Lottie Klein, who was deceased prior to the commencement of this action.

In 1962 plaintiffs, as trustees, filed a suit seeking a determination of whether $90,000 was distributable as trust income or whether it constituted trust corpus. In 1964 Bertram Klein and his wife, Patricia, filed a counterclaim requesting a determination that the heirs at law of Lottie Klein in existence at her death are entitled to the trust corpus upon final distribution. (Patricia Klein, in the capacity of executrix of the estate of Bertram Klein, was substituted for Bertram upon his death in 1966.) The court found that the $90,000 constituted trust corpus and that the heirs at law of Lottie

Klein were to be determined at the date of the termination of the trust, not at the death of Lottie Klein.

The facts are not in dispute. Lottie Klein and her sons, Alec and Bertram, were the owners of the F. L. Klein Noodle Company, a partnership business. Immediately following the death of Alec Klein in January 1940 the partnership interests in the business were as follows: the estate of Alec, 50%; Lottie Klein, 25%; and Bertram, 25%. Approximately six months after Alec's death, Lottie and Bertram Klein each entered into a contract with Alec's estate pursuant to which each would purchase a one-quarter interest in the business. The consideration for each one-quarter interest, to be paid over a period of time, was $90,000.

Subsequently, on November 1, 1941, Lottie Klein established two trusts, commonly known as Trusts Nos. 1 and 2, respectively. She assigned a 20% interest in the company to Trust No. 1 (this trust is not at issue in this case) and she assigned a 5% interest in the company to Trust No. 2 (the trust at issue, hereinafter referred to as "the trust"). The trust was for the express purpose "of establishing certain independent incomes and estates for members of her immediate family," and it was to continue until the death of both Lottie and Bertram. Under paragraph 19 of the trust agreement the trustees were granted "full power and authority to determine the manner in which expenses are to be borne and the manner in which receipts are to be credited, as between principal and income, and also to determine what shall be 'income,' 'net income' and 'principal' . . . ." Various paragraphs of the trust empowered the trustees to accumulate, invest and reinvest any or all of the trust income in their discretion in lieu of paying it to the income beneficiary otherwise entitled thereto; and to subsequently pay to the beneficiary the accumulated income "and the proceeds and

avails thereof." However, under paragraph 3 the trustees were required to "distribute income accumulated . . . during any given year within ten (10) years after the year of the creation thereof."

The income beneficiaries are designated by paragraphs 3 through 7 of the trust agreement, as follows:

Paragraph 3 provides that while both the trustor and Bertram A. Klein are living, Bertram A. Klein is the sole income beneficiary;

Paragraph 4 provides that if Bertram A. Klein predeceases the trustor leaving "no lawful, living descendants or widow," her descendants are the income beneficiaries;

Paragraph 5 provides that if Bertram A. Klein predeceases the trustor but leaves a "widow or lawful, living descendants," the income is to be paid (if the trustees decide to pay it) to the "then living heirs at law of Bertram A. Klein, per stirpes";

Paragraph 6 provides that if the trustor predeceases Bertram A. Klein and he has a wife, the wife becomes the new income beneficiary; and

Paragraph 7 governs the situation where Bertram A. Klein survives his mother but has no wife. In this event the income is payable to "the then living heirs at law of Bertram A. Klein" (sic).

Under paragraph 20, "income accrued or collected but not distributed at the time of the termination of any estate or interest hereunder shall belong and be payable as income to the beneficiary or beneficiaries entitled to the next eventual estates or interests."

The trustor also directed (in paragraph 9) that upon termination of the trust the principal and accumulated income should be distributed "to the heirs at law of the Trustor, per stirpes."

On December 15, 1942, Bertram Klein assigned to the trust his interest under the aforesaid agreement to purchase a 25% interest in the business from Alec's

392

estate. Payment for this interest was made by utilizing the trust's share of partnership earnings from 1943 and 1944 and also from a loan to the trust by the business. The debt due Alec's estate thus was satisfied in 1944 and repayment of the loan was completed in 1952.[1] In 1957 the business was sold to the Sunshine Biscuit Company and the trust received its pro rata portion of the proceeds. Shortly thereafter Bertram Klein demanded that $90,000 be distributed to him as accumulated income. The trustees disagreed as to whether the money represented accumulated income or trust corpus and therefore no distribution was made.

At the trial of this cause Harry Trugman, a trustee, testified that in his opinion the $90,000 in question was trust income. He stated:

> I was involved in this Trust from the very beginning. And I was in contact with all parties whoever had anything to do with this Trust. And based on the original planning and intent of the various parties, particularly B. A. Klein [referring to Bertram Klein], at the time when he transferred his 25% interest which he had purchased from the estate of Alec Klein to Trust No. 2—Based on that background material I felt that B. A. would never have sold his interest to Trust No. 2 if he had known that this amount would be converted to corpus.
>
> . . . . . .
>
> The primary purpose at the time for the assignment of the 25% interest to Trust No. 2 was to spread income to another taxpayer so as to reduce the total income taxes for the family and the trusts which the family controlled.

---

[1] The loan was made in 1944. No distribution of partnership earnings was made to the trust until the loan was repaid. Instead, as income was earned the trust would be credited on the books of the partnership with a partial payment on the loan.

The family group referred to earlier would not consist of anybody other than Bertram Klein and Lottie Klein and possibly the spouse of Bertram Klein.

Aaron Taymor, who became a trustee four years after Bertram transferred his contract to purchase the partnership interest to the trust, agreed that the trusts were established for tax purposes. He further testified that in his opinion the $90,000 in question was trust corpus. His opinion was based solely upon his interpretation of paragraph 2 of the trust agreement, which provided in pertinent part as follows:

> The Trustees shall have the right to acquire, from time to time, by gift or purchase, additional undivided shares and interests in the real estate, business and good will of F. L. Klein Noodle Company, not Inc., a partnership, said shares and interests so to be acquired to be held and managed by the Trustees as part of the Trust Estate and subject to all and any of the provisions hereof in like manner as if the said shares and interests had been placed in this trust by the Trustor, and for this purpose, shall have the right to mortgage, pledge or otherwise hypothecate the principal of the Trust Estate or any accumulated income thereof not available in cash or both. Anything hereinelsewhere to the contrary notwithstanding, the Trustees shall in no event make any distribution to any beneficiary or beneficiaries of the Trust Estate until and unless all and any of the obligations of the Trust Estate relative to the acquisition of any further share and interest in F. L. Klein Noodle Company, not Inc., a partnership, shall have been fully satisfied . . . .

The court, relying primarily upon paragraph 2 of the trust agreement, found that the $90,000 constituted trust corpus. The court further found that, for the pur-

pose of distribution under paragraph 9, the heirs at law of Lottie Klein were to be determined as of the date of the termination of the trust and not as of the death of Lottie Klein.

In this appeal defendants contend that after giving consideration to the general intention of the trustor in establishing the trust it should be determined that the $90,000 constitutes accumulated trust income. Additionally, defendants contend that the trust corpus should be distributed to the heirs at law of Lottie Klein as determined at the date of her death.

Under paragraph 2 of the trust agreement the trustees had the right (but are not required) to purchase additional interests in the noodle company.[2] We do not believe that the portion of paragraph 2, which provides that any acquisition in the noodle company shall be "held and managed by the Trustees as part of the Trust Estate and subject to all and any of the provisions hereof in like manner as if said shares and interests had been placed in this Trust by the Trustor," expresses any intention of the trustor as to whether such an acquisition is to be treated as principal or income. In paragraph 19 the trustor, with certain exceptions, granted to the trustees the power to determine what shall be allocated as between principal and income. Also in paragraph 19 the trustor specifically designated some property as trust income and other property as trust corpus.[3] The

---

[2] There was no intent, by this paragraph, to protect the control of the Klein Noodle Company since it was already entirely owned by the Klein family.

[3] The designations were as follows:

(a) Any interest or dividend received by the Trustees on any security held hereunder, which is accrued and unpaid at the time of the delivery of such security to the Trustees, shall be considered as income;

(b) In case of securities purchased at a discount, the entire subsequent sale price or maturity value shall be credited to principal;

scope of this power was not limited to receipts of the trust but included any trust property whatsoever. Therefore, if the trustor had intended to direct whether an acquisition of the noodle company shall be income or principal she would have included such a provision in paragraph 19. We find that the aforesaid language of paragraph 2 relied upon by the appellees deals only with the authority of the trustees to purchase a business interest in the noodle company and their powers to hold and manage the same thereafter.

Nor do we believe that the portion of paragraph 2 which directs that distribution to beneficiaries be withheld pending full payment for any interest to be acquired in the noodle company has any bearing on the question before us. While the trustees were authorized and directed to use or accumulate income for the purchase of the business interest, we do not understand such a direction to authorize conversion of income to corpus, and we do not consider that this result follows by implication. It would have been extremely simple to direct such a transfer if it had been intended. The words used affect only the time of distribution and are not words of entitlement, nor independently dispositive in character. Northern Trust Co. v. North, 73 Ill App2d 469, 220 NE2d 28.

From what the record discloses of the background of this case, it was as evident at the time of creation of the trust as it is now, that the business interest to be acquired would be worth a substantial amount of money. The approximate value had more or less been determined

---

(c) In case of securities purchased at a premium, the Trustees shall charge the premium against principal without amortizing the same; and

(d) Any stock dividend or subscription right which may be declared upon or issued in connection with any stock constituting a portion of the Trust Estate shall be considered as principal and not as income.

by the contracts of purchase from Alec's estate. It was also evident that the trustor was cooperating fully with her son Bertram in a plan to split his income in order to minimize income taxes, and the trust was to be used as the vehicle for accomplishing this purpose. Whether it was a proper or successful plan is a matter with which we are not concerned. Its existence does, however, highlight the fact that Bertram was interested in saving a part of the income tax on his income from the noodle company; and that his mother was working with him toward that end. And it highlights further the fact that a person interested in saving a part of the tax on income from certain property would be extremely unlikely to yield up the property itself without consideration. To be sure, we are now speaking of the likelihood of Bertram's intention, but we believe that the whole of the trust instrument, let alone the whole record, discloses a community of interest and intention on the parts of Bertram and his mother. Mrs. Klein's close relationship with her son seems much more likely to have produced in her a cooperative rather than an antagonistic attitude toward Bertram's tax-saving plan (she made Bertram a trustee of the trust in question); and to have produced in her an intention to create, through the trust, a temporary haven for Bertram's purchase contract, rather than a well-camouflaged trap which would permanently deprive him of the substantial trust income of which she herself had designated him as the beneficiary. If Bertram had not assigned to the trust his contract to purchase the 25% interest in the noodle company he, rather than the trustees, would have received from the company over the years sufficient income to pay off the purchase price (though probably subject to higher income tax) and he would have wound up owning the 25% business interest. Or, if there had been cash corpus in the trust to pay for the business interest when Bertram assigned his contract to the trust, it could have

been paid for out of principal, in which case, over the ensuing years, Bertram would have received distribution of $90,000 of trust income. Under the facts as they actually existed, however, the $90,000 of income received by the trustees from the company, and otherwise distributable to Bertram, was withheld (pursuant to the plan of Bertram and the trustor) and used to complete the purchase of the business interest. But then neither the $90,000 of income, nor the business interest purchased with it, was distributed to Bertram.

It is possible that such an unusual and unfair result could be intended by a trustor, but under all the circumstances of this case we think that it was not so intended by this trustor and that the inequitable conclusion of the trial court is one which should not be reached in the absence of a specific direction to that effect in the trust instrument. As indicated, we find no such specific direction.

Further support of our position is found in paragraph 3 of the trust agreement. The trustor directed that all income which was accumulated during any given year must be distributed to the income beneficiary within ten years after the accumulation thereof. If the trustees were allowed to change the character of accumulated income into trust corpus merely by investing it then, conceivably, there would be no accumulated income and the above provision of paragraph 3 would be rendered meaningless. We cannot believe it was trustor's intent to have the effect of this provision vitiated by the investment of accumulated income. If the trustor had intended to allow the trustees to alter the character of accumulated income in that manner she would have provided in this intricately drawn document that all income which was accumulated "but not invested" must be distributed within ten years.

█ Therefore, we find that the $90,000 in question represents accumulated trust income.

The remaining issue in this case requires the trust agreement to be construed so as to determine the recipients of the corpus upon termination of the trust. The relevant portion of the trust agreement is paragraph 9, which provides:

> In the event of the death of the last survivor of Bertram A. Klein and the Trustor, then the Trustees shall forthwith distribute and pay all and any the principal and accumulated income and any and all other the proceeds and avails of the Trust Estate to the heirs at law of the Trustor, per stirpes.

Lottie Klein died on September 26, 1961. Bertram Klein died on February 3, 1966, shortly after the notice of appeal was filed in this case. Appellants (the widow of Bertram Klein in her own right and as executrix of his estate) contend that the heirs at law of the trustor are to be determined as of the time of Lottie Klein's death and therefore the trust corpus should be divided equally between the estate of Bertram Klein and the children of Alec Klein. Defendants-appellees (the children of Alec Klein) contend that the aforesaid heirs are to be determined at the termination of the trust and therefore they should receive the entire corpus.

In Le Sourd v. Leinweber, 412 Ill 100, 105 NE 2d 722, where the decedent in his will devised real estate to his daughter for life and ultimately a remainder to his heirs, the court held that the heirs were to be determined at the date of the testator's death and not at the termination of the life estate. The court stated at page 105 that:

> Ordinarily, the word "heirs" is used to designate those persons who answer this description at the death of the testator . . . . A devise of a future interest to the testator's "heirs" is construed as a devise to such persons as are his heirs at the time

399

of his death, unless the intention of the testator to refer to those who would have been his heirs had he died at a subsequent time is clearly manifest by the language used in the will. This construction is not changed by the fact that a life estate may precede the devise to the testator's heirs. Neither does it make any difference whether the heirs were living or dead when the period of distribution arrived, nor that the life tenant might be the sole heir of the testator.

Rules of construction of wills are alike applicable to the construction of trust agreements. Brinkerhoff v. Ridgely, 232 Ill App 12, 17.

Defendants-appellees argue that the trust agreement establishes that the settlor intended her heirs at law to be ascertained at the termination of the trust, and in support thereof they rely principally upon the language of paragraphs 20 and 22, respectively.

Appellees cite a clause from paragraph 20 which provides that "the interest of the beneficiaries shall in no case vest until and unless said beneficiaries shall be entitled to receive the demand . . . the trust or any part thereof in accordance with the terms and provisions of this agreement." However, from an examination of the remaining portions of that paragraph [4] we find that its scope is limited to trust income and is in accord with

---

[4] The remainder of paragraph 20, from which the portion relied upon by appellees was taken out of context, provides:

Income accrued or collected but not distributed at the time of the termination of any estate or interest hereunder shall belong and be payable as income to the beneficiary or beneficiaries entitled to the next eventual estates or interests. No interest shall accrue upon any income available for distribution unless the same shall not be promptly distributed by the Trustees in accordance with the terms and provisions hereof.

400

other provisions of the trust agreement which forbid payments of income to be made "by way of anticipation."

Paragraph 22 is a spendthrift provision and contains the clause that "all payments of income and distribution of principal to the several beneficiaries of the Trust Estate as and when such payments or distributions become due, shall be made to said beneficiaries in person or upon their personal receipts . . . ." The provision also contains the usual prohibitions against assignability and transferability. Appellees assert that the spendthrift clause has the effect of rendering an interest, otherwise vested, contingent upon survivorship. We are apprised of no authority which establishes that absolute rule. In each of the cases relied upon in support of that assertion [5] the court was called upon to construe a will; and in each case the court construed the spendthrift clause contained therein in light of the testator's intention as ascertained upon examination of his entire will. In the instant case the provisions of the trust agreement cover innumerable contingencies concerning the disposition of trust income. The fact that the settlor gave little thought to the disposition of trust corpus is evident by the single, short provision devoted thereto. We cannot say that the existence of a standard spendthrift provision in the trust agreement before us clearly manifests an intention of the settlor that her heirs at law be ascertained upon termination of the trust. Nor does the presence of the aforesaid "in person" clause contained within the spendthrift provision add to the forcefulness of appellees' contention. In a long and complex document the maxim that every word be given a

---

[5] Routt v. Newman, 253 Ill 185, 97 NE 208; First Nat. Bank of Chicago v. Cleveland Trust Co., 308 Ill App 639, 32 NE2d 964; Cowdery v. Northern Trust Co., 321 Ill App 243, 53 NE2d 43; Geiger v. Geer, 395 Ill 367, 69 NE2d 848.

significant meaning is of little value. Costello v. Warnisher, 4 Ill App2d 571, 124 NE2d 542. In Northern Trust Co. v. North, 73 Ill App2d 469, 220 NE2d 28, after an examination of the testatrix' will, we gave no independent dispositive effect to a substantially identical "in person" clause contained within a spendthrift provision. In such a document as that before us in the instant case, an "in person" clause included as part of a standard spendthrift provision shall not be construed to have an independent dispositive effect.

We find that neither of the aforesaid paragraphs of the trust agreement clearly manifests an intent upon the part of the settlor, Lottie Klein, that her heirs be ascertained at the termination of the trust.

In further support of their position appellees argue that paragraphs 3 and 4, respectively, demonstrate that it was the intention of the settlor that no portion of the trust income or corpus was to vest in the estate of a deceased beneficiary. Paragraph 3 was amended on December 31, 1946, to provide that if Bertram was to die before receiving accumulations to which he might be entitled, the accumulated income would be distributed to Bertram's then living children or, if none, then to Bertram's spouse, and if no spouse, to the then living descendants of Alec Klein. Prior to amendment paragraph 3 contained no reference to Bertram's "then living children" nor to Alec's "then living descendants." Moreover, the amendment was executed by the three trustees and by Bertram Klein individually, by authority of paragraph 26 of the trust agreement. Even though the settlor was alive and in apparent excellent health at that time she did not sign the amendment, nor is there evidence that she acquiesced therein. Therefore we cannot consider the amendment in acertaining her intention with regard to the provisions of the trust agreement.

402

Paragraph 4 prior to amendment [6] provided that had Bertram predeceased Lottie leaving no living descendants, the income would have gone to the trustor's *then living* heirs at law. That paragraph actually supports the appellants' contention, in that it demonstrates that the drafter of this instrument was aware of how to designate the heirs of an ancestor in existence at a time other than at the latter's death. In the instant case if the settlor had intended that corpus of the trust be distributed to her heirs at law in existence at the termination of the trust, the language of paragraph 9 which disposes of the corpus would have directed the trustees to distribute the corpus to "the then living heirs at law of the Trustor" instead of to "the heirs at law of the Trustor."

We find that none of the provisions of the trust agreement relied upon by the defendants-appellees (nor any other provision thereof) clearly manifest an intent upon the part of the settlor, Lottie Klein, that her heirs at law be determined at the termination of the trust. Therefore, for the purpose of distribution under paragraph 9, the heirs at law of Lottie Klein are to be ascertained as at the date of her death.

We have also found that the $90,000 in question represents accumulated trust income. Therefore the decree of the trial court is reversed and the cause remanded with directions to enter a decree in accordance with this opinion.

Reversed and remanded with directions.

ENGLISH, P. J., concurs.

---

[6] Paragraph 4 was also amended at the same time and in the same manner as was paragraph 3. The amendment changed the word "heirs" to "descendants" and made other changes not here relevant.

403

McCORMICK, J., dissents.

I must respectfully dissent to the conclusion reached in the majority opinion. As pointed out therein, the facts are not disputed; the only question before this court is an interpretation of the trust agreement to determine whether or not the transfer of the 25 percent interest in the F. L. Klein Noodle Company, a partnership, constituted an increase in the trust corpus or was merely an investment of the income, and that no increase in the trust corpus resulted therefrom.

As pointed out in the majority opinion, immediately following the death of Alec Klein in January 1940, the partnership interests in the business were as follows: estate of Alec, 50%; Lottie Klein, 25%; Bertram, 25%. Six months after Alec's death, Lottie and Bertram each entered into a contract with Alec's estate, which contract provided that each would purchase a one-quarter interest in the business; the consideration for each one-quarter interest to be paid over a period of time was $90,000. Subsequently, on November 1, 1941, Lottie Klein established the trust known as Trust No. 2, to which she assigned a 5% interest in the company. The trust agreement provided that the trustor, Lottie Klein, desired to create a trust in and to an undivided 1/20 share and interest which she now owns in the F. L. Klein Noodle Company, a partnership. It is further set out that the purpose of the trust was to establish independent incomes and estates for members of her immediate family, and that the trustees are to have and hold the said property together with any additional property "of any kind, nature or description whatsoever, which may from time to time be added to this trust by the trustor or acquired by the trustees in accordance with the terms and provisions hereof . . ."

Paragraph 1 of the agreement provides that:

"The Trustees shall hold and manage the Trust Estate and shall, insofar as possible, and consistent

404

with the terms and provisions hereof, invest and reinvest all funds from time to time available for investment or reinvestment in income-producing bonds, stocks, mortgages and other securities, investments and properties as the Trustees, in the exercise of their uncontrolled discretion, shall deem proper and for the best interests of the Trust Estate, . . ."

The trustees are given a very broad power to deal with the trust estate and particularly with that portion of the trust estate which is an interest in the F. L. Klein Noodle Company, and they are authorized to agree that it be changed from a general partnership to a limited partnership, or that it be made a corporation, or any other legal combination which they may in their discretion desire. It is worthy of note that there is no right given to the trustees to sell any interest in the F. L. Klein Noodle Company.

. Paragraph 2 is the crucial clause in the contract, and it is mentioned in the majority opinion; however, since it is not completely set out, we believe it would be advisable to repeat it here. It provides the following:

"The Trustees shall have the right to acquire, from time to time, by gift or purchase, additional undivided shares and interests in the real estate, business and good will of F. L. Klein Noodle Company, not Inc., a partnership, said share and interests so to be acquired to be held and managed by the Trustees as part of the Trust Estate and subject to all and any of the provisions hereof in like manner as if the said shares and interests had been placed in this trust by the Trustor, and for this purpose, shall have the right to mortgage, pledge or otherwise hypothecate the principal of the Trust Estate or any accumulated income thereof not available in cash, or both. Anything hereinelsewhere to

405

the contrary notwithstanding, the Trustees shall in no event make any distribution to any beneficiary or beneficiaries of the Trust Estate until and unless all and any of the obligations of the Trust Estate relative to the acquisition of any further share and interest in F. L. Klein Noodle Company, not Inc., a partnership, shall have been fully satisfied; and, in the event of any such acquisition, the Trustees shall not invest or reinvest the net cash income of the Trust Estate but shall hold and retain the same in cash or in bank funds and expend the same only for the purpose of satisfying all and any of the obligations of the Trust Estate relative to any such acquisition of further shares and interests. The Trustees shall be released of all and any liability or obligation to the Trust Estate and the beneficiaries thereof, or either, as to the acquisition of any such further shares and interests and shall have no responsibility whatsoever in and with regard thereto excepting only for action taken on non-action suffered wilfully and in bad faith."

Paragraph 3 of the trust agreement, which is touched on rather lightly in the majority opinion, provides:

"Excepting only as hereinelsewhere in paragraph (2) hereof provided, the Trustees may, in the exercise of their uncontrolled discretion, during the lifetime of the Trustor, do any of the following or any possible combination thereof: Accumulate and invest and reinvest all and any of the net income of the Trust Estate, or pay said net income quarter-annually or oftener, but not by way of anticipation, to Bertram A. Klein, or partially accumulate and invest and reinvest and partially pay and distribute said net income quarter-annually or oftener, but not by way of anticipation, to Bertram A. Klein,

406

or pay and distribute accumulated income or the proceeds and avails thereof, or both, partially or wholly, to Bertram A. Klein. . . ."

Paragraph 2, read together with paragraph 3, gives the trustees the right to invest in the F. L. Klein Noodle Company, and if any meaning is to be given to paragraph 2, it must be that those interests shall be held and managed by the trustees as a part of the trust estate. Reading paragraph 2 in connection with the introductory paragraph, which we have previously quoted, it must be interpreted that the interests in the Klein Noodle Company which are to be acquired are to be acquired as trust res. That is further stressed by the fact that in paragraph 3 the provision with reference to investments is separated and set apart from the rights given in paragraph 2 of the agreement. There is no question that under paragraphs 1 and 3 of the agreement the trustees have the right to invest and reinvest the net income of the trust estate, but in paragraph 3 a red flag is raised, indicating that the only acquisition of additional interests in the F. L. Klein Noodle Company can be made under the provisions of paragraph 2. A reasonable interpretation of those provisions would be that the only investment which can be made in the F. L. Klein Noodle Company, a partnership, must be as a part of the trust res. In fact, it would seem to be an extraordinary construction to hold that the trustees had the right to invest the accumulated income in the F. L. Klein Noodle Company, particularly, when we consider that in paragraph 4 of the agreement it is provided that the trustees may invest and reinvest the net income of the trust estate, or pay it quarter-annually to the then living heirs at law of the trustor, and the further controlling provision in that clause which makes it mandatory upon the trustees to distribute all accumulated income within 10 years. The purpose of

407

the trust was to retain the integrity of the F. L. Klein Noodle Company.

On December 15, 1942, Bertram Klein had assigned to the trust his interest to purchase a 25% interest in the business from Alec's estate. Payment was made by utilizing the trust share of partnership earnings from 1943 and 1944 and also from a loan to the trust by the business. The debt to Alec's estate thus was satisfied in 1944, and the repayment of the loan was completed in 1952. In 1957, the business was sold to the Sunshine Biscuit Company, and the trust received its pro rata portion of the proceeds. Shortly thereafter Bertram Klein demanded that $90,000 be distributed to him as accumulated income. The trustees disagreed as to whether the money represented accumulated income or trust corpus, and therefore, no distribution was made.

It would seem apparent that it was the intention of Bertram Klein that the trust, rather than he, should pay for the 25% partnership interest with the pro rata earnings, since the income tax to the trust on the aforesaid earnings would be substantially less than if Bertram paid the tax thereon. It may have been Bertram's intention that after all the payments were made by the trust, this partnership interest would then be payable to Bertram, the income beneficiary of the trust. However, it is not the intention of the beneficiary which is controlling, but it is the intention of the settlor as determined from the trust document.

In this case it would seem to be very clear—as the master found and as the trial court decreed—that the $90,000 which was paid for the 25% interest in the partnership must be considered as trust res.

The majority opinion devotes a great deal of time to arguing that to so hold would deprive Bertram Klein of the $90,000 income. Most of the discussion in that portion of the opinion is argumentum ad hominem. The

fact that Bertram did not understand the contract at the time he entered into the agreement is of no avail; nor can this court consider the fact that he may have made a poor bargain. It is not the duty of this court to reform a contract which, in the opinion of the writer of this dissent, is clear and definite.

The other question before this court is the time when, under the terms of the trust, the heirs at law of Lottie Klein were to be determined. The opinion of the majority is that they were to be ascertained as of the date of Lottie Klein's death. With this determination the writer of this dissent is in accord.