(No. 38584.—■)

THE PEOPLE *ex rel.* PAUL PAULING, Appellant, *vs.* DR. GABRIEL MISEVIC, Superintendent of Kankakee State Hospital, Appellee.

*Opinion filed November 24, 1964.*

PAUL E. THURLOW, of Joliet, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and PAUL A. O'MALLEY, Assistant State's Attorneys, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County quashing a writ of *habeas corpus* and remanding the relator, Paul Pauling, to the custody of respondent, Dr. Gabriel Misevic, who is superintendent of the Kankakee State Hospital. Section 5 of article VI of our constitution, as amended with effect from January 1, 1964, gives us jurisdiction to entertain the appeal. *Cf. People ex rel. Pauling* v. *Uffelman,* 9 Ill. App. 2d 412.

In June, 1954, Paul Pauling was indicted and tried in the criminal court of Cook County for the crime of attempted murder, but a jury found him not guilty by reason of insanity when the offense was committed. At the same time, in conformity with section 12 of division II of the Criminal Code then in effect, (Ill. Rev. Stat. 1953, chap. 38, par. 592,) the jury made a further finding that he had not "entirely and permanently recovered from such insanity." The trial court, as further provided by the statute, thereupon entered an order transferring relator to the custody of the Public Welfare Department and directing his confinement in a security hospital until such time as "in a subsequent hearing before a jury, the said Paul Pauling shall be determined by a verdict to have entirely recovered from such insanity." Since that time relator has been confined in State hospitals,

and it is undisputed that he was afflicted with schizophrenia, a form of insanity.

Nearly ten years later, in February, 1964, a brother of the relator filed a petition for writ of *habeas corpus* in his behalf, alleging that relator is not now insane and praying for his release from confinement. In addition, it was alleged that relator had been examined by a licensed psychiatrist in November, 1963, and that the doctor reported: (1) That relator was no longer a source of danger to himself, his family or the community; and (2) that his continued confinement in a State hospital would bring no further benefit to the relator or society. A synopsis of the doctor's interview and his findings, attached to the petition as an exhibit, disclosed that relator has become blind during his confinement. Further, it is the reasonable intendment of the entire record that relator's brother, who resides on a farm, is willing to assume the burden of relator's care and custody.

A writ issued, returnable February 18, 1964, and on such date relator appeared in court with his counsel. However, after hearing arguments and permitting a State psychiatrist to testify that relator had not recovered his sanity and that he was still in need of 24-hour observation and treatment, the trial court quashed the writ and remanded relator to the custody of respondent. The precise basis for the order was that the petition was insufficient because it did not allege relator was "entirely and permanently" recovered as provided in the statute under which he was committed. In such regard, relator's counsel has admitted, both below and in the briefs filed in this court, that schizophrenia is a mental disease from which one never entirely recovers.

At issue here is that portion of the statute which states: "If after commitment such person in a subsequent hearing before a jury shall be determined by verdict to have *entirely and permanently* recovered from such insanity, he shall likewise be discharged from custody." (Ill. Rev. Stat. 1953, chap. 38, par. 592, emphasis ours.) Due to the circumstance

that schizophrenics never fully recover, relator concedes that he cannot meet the criteria of "entire" recovery, or "permanent" recovery within the construction placed upon the word "permanent" in *People* v. *Kadens,* 399 Ill. 394, 400-401. What he asks is that this court either except schizophrenics from the operation of the statute, or that we construe the statute as reflecting a legislative intent that the confinement it directs should not continue once the insane person has become blind and harmless to himself and others. To sustain his first alternative relator points out that a schizophenic can never be released from confinement within the contemplation of the statute, and brings to our attention medical opinion that prolonged confinement is in fact a detriment to one suffering from schizophrenia; as to the second alternative it is argued that ethics, morals and good conscience require such a construction.

We are sympathetic to relator's position and pleas, and we are likewise aware that the statute under which he is confined antedates new insights into the problem of mental illness and its treatment and control. These considerations, however, afford no basis for the judiciary to invade the province of the legislative arm of our government. The State, as *parens patriae,* exercises the same control over insane persons as was formerly exercised in England by its king, and under our form of government the power is exercised by the courts only through legislative enactments. (*Dodge* v. *Cole,* 97 Ill. 338; *Dowdall* v. *Hutchens,* 263 Ill. App. 275; *Cowdery* v. *Northern Trust Co.* 321 Ill. App. 243.) Stated differently, it is the function of the legislature to pass laws for regulation of the property and person of those who are insane, and the judicial power may be exercised only in conformity with such laws.

In plain and unambiguous terms our legislature has provided that persons who escape the consequences of criminal acts by reason of insanity must, if the insanity continues at the time of trial, be given to the custody of the Public Wel-

fare Department and confined in a security hospital until such time as they have entirely and permanently recovered from such condition. Where the words employed in a legislative enactment are free from ambiguity or doubt, they must be given effect by the courts even though the consequences may be harsh, unjust, absurd or unwise. (*Louisville and Nashville Railroad Co.* v. *Industrial Board,* 282 Ill. 136; *City of Nameoki* v. *City of Granite City,* 408 Ill. 33.) Such consequences can be avoided only by a change of the law, not by judicial construction, (*City of Decatur* v. *German,* 310 Ill. 591,) and, by the same token, courts are not at liberty to read exceptions into a statute the legislature did not see fit to make, (*Belfield* v. *Coop,* 8 Ill.2d 293,) or, by forced or subtle constructions, to alter the plain meaning of the words employed. (*People* v. *Shader,* 326 Ill. 145; *Stiska* v. *City of Chicago,* 405 Ill. 374.) Based upon these principles, we conclude here that the concession that relator had not entirely and permanently recovered from the condition which led to his confinement left the trial court with no alternative other than to quash the writ, and that any relief to relator from the operation of the statute must come from the legislature rather than the courts.

For a final contention relator asserts he was denied due process of law due to the failure of the trial court to set the matter for hearing on the merits. Under the circumstances reflected in this record, the point is not well taken. In view of the statutory criteria, relator's concession that schizophrenics never fully regain their sanity made any further proceedings unnecessary and superfluous.

The order of the circuit court, quashing the writ and remanding relator to the custody of respondent, is affirmed.

*Order affirmed.*