In the Matter of the Estate of George B. Garrett, Deceased.
Lucille Loftus, Public Administrator, Petitioner-Appellee, v. Sherman S. Garrett, Respondent-Appellant.

Gen. No. 66–101.

Second District.

March 21, 1967.

E. M. Sullivan, of Amboy, and Franklin, Flynn & Palmer, of Champaign, for appellant.

Tobias G. Garry, of LaSalle, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This is a citation proceeding which appears to have been filed under sections 183–186 of Article XV of the Probate Act (Ill Rev Stats 1965, c 3, pars 183–186), by the administrator of the Estate of George B. Garrett. The petitioner prayed that Sherman S. Garrett, respondent, be cited to appear before the court to testify regarding certain personal property, books of record, papers, evidence of debt or title to lands in his hands or about which he may have information, which property, according to

the petitioner's belief, belonged to the decedent or his estate; that the respondent be compelled to answer the questions propounded to him; and that "the proper order of this Court be entered upon such examination if it be found that such described property is the property of George B. Garrett," or his estate.

It appears that George B. Garrett, who had been in a nursing home for several years, died October 20, 1962, at the age of 87 years and left him surviving an adopted son, whose whereabouts is unknown. The decedent's next closest relatives were his nephew the respondent, and his niece Louise Bauer, the respondent's sister. The respondent and his sister appeared to have taken care of the business affairs of the decedent during the last years of his life.

In March of 1947, the decedent deeded an 80-acre tract of farmland to the respondent and respondent's sister, reserving unto himself a life estate therein. On October 6, 1961, the decedent withdrew the sums of $7,392.93 and $10,082.60, respectively, from savings accounts in two banks, and an undisclosed amount from a third bank. These sums were then deposited in accounts in the name of the respondent and respondent's sister.

On October 6, 1961, the decedent also deeded an additional 40-acre tract of land to respondent and respondent's sister, again reserving unto himself a life estate therein; and on November 1, 1961, the decedent assigned and delivered to the respondent and his sister certain stock certificates having a value of approximately $59,-200. The respondent immediately commenced to liquidate these stocks. The monies, securities and real estate constituted substantially all of the assets owned by the decedent.

The respondent does not claim that these properties were turned over to him as his own property, but rather, that they were transferred under oral directions: first, that he care for the decedent by paying the expenses of

his maintenance, last illness and burial; and then, that he distribute the remaining balance in a certain designated manner. The balance to be distributed totalled $77,000. The sum of $1,000 was to be distributed to nonfamily recipients; $10,000 to Louise Bauer; and $66,000 to twelve persons—all of whom were children and grandchildren of the respondent and his sister. The respondent testified that the amounts distributed to each of the twelve persons were designated by decedent. There was no written evidence pertaining to such directions.

It further appears that after the death of the decedent, the respondent did distribute all of the funds to his children and the children and grandchildren of Louise Bauer. The distributions were made by depositing the funds in savings accounts, all of which were in Indianapolis banks, with the exception of one account in a Chicago bank. The distributions were purportedly made in this manner because the recipients lived throughout the country, and the respondent wanted to put the money in a bank not convenient to them—to make it "a little difficult to run in and draw out a few dollars." Aside from the real estate, it appears that there now remains in the possession of the respondent only $500 in currency from the assets which he received from the decedent.

The trial court found that no trust was created between the decedent and the respondent and the respondent's sister, due to the lack of certainty relative to the various material terms essential to a valid trust; that no valid gift was made; and that the respondent was simply an agent for the decedent and held the funds not expended during decedent's lifetime in a constructive trust for the decedent's estate. It ordered that the respondent render an account to said court of the property owned by the decedent and transferred to the respondent during the decedent's lifetime; and that the respondent pay over and deliver to the administrator of the decedent's estate, all of the said monies, securities and property, or the

145

proceeds of the sale thereof, and the income therefrom, including the real estate, not used for the care of the decedent or in payment of his obligations or funeral expenses.

The respondent contends that the trial court went too far in trying the title to the various items of property in question since there was an absence of necessary parties before the court—the persons to whom such property had been distributed. He further contends that the sole issue was whether he had in his possession any property belonging to the decedent; that the evidence indicated he had distributed such property in good faith; and that the statute was not intended to impose liability on one who has transferred such property in good faith and no longer is in possession thereof.

■ Section 183 of the Probate Act provides a means of relief for each of two disjunctive, and perhaps unrelated, situations. It provides that upon the filing of a verified petition, the court shall order a citation to issue for the appearance of any person whom the petitioner believes (1) to have concealed, converted, or embezzled or to have in his possession or control any personal property, books of account, etc., or evidences of debt or title to lands which belonged to a person whose estate is being administered therein, or to his estate or personal representative, or (2) to have information or knowledge withheld by the respondent from the personal representative and needed for the recovery of any personal property by suit or otherwise. Subdivision (1) of the section contemplates the actual recovery of personal property belonging to the estate, including the determination of questions of title and rights of possession, all as permitted under section 185 of the Probate Act. Subdivision (2) has as its purpose the discovery of information.

The statute thus contemplates two distinct types of proceedings, one merely in the nature of discovery and the other a truly adversary proceeding in which the right

146

and title to personal property may be contested with optional jury trial on demand, and with power in the court to determine all questions of title, claims of adverse title and the right of property, and to enforce its judgments by execution or contempt proceedings. Keshner v. Keshner, 376 Ill 354, 359, 360, 33 NE2d 877 (1941); In re Estate of Curley, 43 Ill App2d 389, 391, 392, 193 NE2d 607 (1963); Kahn, What Every Lawyer Should Know About . . . Discovery and Recovery Citations in the Probate Court, Vol 44, Ill BJ 202, 203, 204 (1955).

■ ■ We agree with the respondent that if the petition sought only information, the court could not then try the question of title to the various properties and order them turned over to the estate. The citation procedure permitted by Article XV affords a simple, comprehensive and summary method of invoking the aid of the court. While courts are liberal in the procedures they permit to be followed under these sections, an order must still be based upon an issue established in the pleadings. Such requirement is imperative so that the respondent may know the issues which he will be called upon to defend before the court. Broberg v. Mann, 66 Ill App2d 134, 137, 138, 213 NE2d 89 (1965); Moser v. Feciura, 324 Ill App 552, 556, 58 NE2d 920 (1945); In re Estate of Shanks, 282 Ill App 1, 13 (1935).

■ The petition recited that petitioner believes that the respondent "has in his possession or control" certain personal properties, including deeds to real estate, belonging to said decedent or his estate which the respondent wrongfully withholds; and that the respondent has knowledge or information regarding certain properties which may be essential to the recovery of said property. The prayer of the petition was not only that the respondent be compelled to appear and give whatever information he had, but also that the court enter a proper order if it be found that the property is that of the estate. This petition was sufficient to apprise respondent that more

147

than mere information was sought in the proceeding, and that as to any personal property within respondent's possession or control, petitioner also sought its recovery. We believe that the petition was sufficient to sustain the order of the trial court insofar as it directed the respondent to deliver to the administrator that personal property which was still in his possession or control, to-wit: the $500 in currency.

Beyond this, however, the order of the trial court went too far. According to the testimony of the respondent, all of the remaining assets derived from the decedent had been distributed to other persons. The order of the trial court found that these assets and the proceeds of the sale or transfer thereof, together with the income therefrom, as well as the income from the 120 acres of farmland in question, were the property of the decedent. It directed the respondent to account therefor, and to pay and deliver to the administrator of the decedent's estate said items of property or the proceeds thereof, and the income therefrom, as well as the farm income, not expended for the care, support and funeral expenses of the decedent. Yet, the petitioner did not seek an accounting, and none of the recipients of such property, or the proceeds thereof, were made parties to the proceeding. It is fundamental that one may not be deprived of his property, or have a judgment rendered against him —which is the effect of the court's order—without having an opportunity to be heard. In re Estate of Rackliffe, 366 Ill 22, 26, 7 NE2d 754 (1937) ; In re Estate of Shanks, supra, 12. The procedural aspects of due process and equal protection of the laws require that a person be given notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. Pettigrew v. National Accounts System, Inc., 67 Ill App2d 344, 350, 213 NE2d 778 (1956). Insofar as the court purported to direct the respondent to render

148

an account with reference to said property, or the proceeds derived therefrom, or the income therefrom, and to pay over or deliver those items which were no longer in his possession or control, but purportedly had been distributed to others, the order was entered under proofs, without allegations in support thereof, and was erroneous. Stowell v. Satorius, 413 Ill 482, 490, 109 NE2d 734 (1953) ; Wilson v. Wilson, 56 Ill App2d 187, 194, 205 NE 2d 636 (1965) ; Larson v. City of Loves Park, 48 Ill App 2d 191, 193, 198 NE2d 525 (1964).

 We do not mean to be understood by this to suggest that petitioner is without a remedy. These proceedings are designed to provide a comprehensive and summary remedy for the discovery and recovery of property of the decedent which is found to be in the possession of others. Where, as here, information is obtained, from a person cited to appear before the court, that the property in question is within the control of others, a supplemental petition, or petitions, may be filed to recover such property. (Ill Rev Stats 1965, c 110, par 39.) The persons who have possession or control of the property are necessary parties to such supplemental petition or petitions if the court is to determine questions of title, claims of adverse title and the attendant property rights. In addition, if the petitioner seeks an accounting or claims the real estate in question, allegations in support of such relief must be asserted. An accounting cannot be ordered without allegations in support of such action and title to real estate cannot be adjudicated on an allegation that the respondent has in his possession deeds to real estate which deeds belong to said decedent.

 Under section 9 of the New Judicial Article (Ill Const, § 9, art VI) the Circuit Court has unlimited original jurisdiction of all justiciable matters, and the heretofore limited jurisdiction of the Probate Court has now been superseded by the unlimited original juris-

diction of the Circuit Court. Consequently, the complete determination of Article XV proceedings now lie within the competence of the Probate Division of the Circuit Court, subject, to Court Rules. In re Estate of Breault, 63 Ill App2d 246, 270–272 incl., 211 NE2d 424 (1965). Plenary actions in the Equity Division of the Circuit Court for an accounting or for the adjudication of title to real estate are not now required. Such actions may proceed in the Probate Division of the Circuit Court.

■■ Historically, under our Constitution of 1870, the Probate Court was a court of limited jurisdiction and had no jurisdiction over an accounting proceeding or an action to try title to real estate. Sims v. Powell, 390 Ill 610, 617, 62 NE2d 456 (1945). Such limitation was removed by section 9 of the New Judicial Article.

Without attempting to prejudge what may be presented to the trial court by way of a supplemental petition or petitions, or to suggest who should be named as respondents therein, or the theory or theories upon which the right to recover should be predicated, or to indicate the defenses thereto, we do feel obligated to chart a course of procedure upon the return of this case to the trial court. Upon remandment, the petitioner, in her discretion, may file a supplemental petition herein against the respondent or against the distributees of such property, or against all of such parties, on the theory of wrongful conversion of the decedent's property, or on any other theory or theories which she deems appropriate. Dependent upon the facts adduced, such distributees may, or may not, be subject to the jurisdiction of the court under section 17 of our Civil Practice Act (Ill Rev Stats 1965, c 110, par 17), and the respondent may, or may not, be guilty of converting the personal property irrespective of the fact that it is no longer in his possession or control. Ill Rev Stats 1965, c 3, pars 183, 185; Keshner v. Keshner, supra, 359; In re Estate of Porter, 43 Ill App2d

416, 424, 425, 193 NE2d 617 (1963) ; In re Estate of Shanks, supra, 10. Upon proper allegations in such petition, subject to asserted defenses and the proof adduced, the court has jurisdiction to adjudicate title to the real estate in question and order an accounting.

The present respondent herein, and any additional parties who are named as respondents in the supplemental petition, shall be given adequate opportunity to answer such petition and to interpose such affirmative defense or defenses as he or they may desire. Upon issue being drawn, the court should then conduct a full hearing on such issues and enter such judgment as may be proper in view of the issues drawn by the pleadings and the evidence adduced.

For the reasons we have indicated, that part of the order or judgment of the trial court directing the delivery by respondent to the administrator of the properties still within the possession of the respondent, to-wit: the sum of $500 is affirmed; the remainder thereof is reversed and the cause remanded for further proceedings consistent with the views expressed herein, subject to the ultimate factual situation as established by the evidence.

Affirmed in part and reversed in part, and remanded.

MORAN and BURT, JJ., concur.