In the Matter of the Estate of Raymond Piech, Incompetent.
Continental Illinois National Bank and Trust Company of Chicago, Petitioner-Appellant, and Mary Piech, Appellant, v. Estate of Raymond Piech, Incompetent, Respondent-Appellee.

Gen. No. 53,477.

First District, First Division.
December 8, 1969.
Rehearing denied January 5, 1970.

Jackson L. Boughner and Carl A. Gorski, of Chicago, Ransom & Ransom, of Oak Park, for appellants.

Gregory A. Gelderman, of Chicago, guardian ad litem.

MR. JUSTICE BURMAN delivered the opinion of the court.

This action arises out of a petition by the Conservator of the Estate of Raymond Piech, an incompetent, to the Probate Division of the Circuit Court of Cook County for approval of a proposed property settlement agreement between the conservator and Mary Piech, Raymond Piech's wife. The court denied the petition. The sole issue on appeal is whether the Circuit Court has power to approve a property settlement between the conservator of the estate of an incompetent and the incompetent's wife.

Raymond and Mary Piech were married on February 12, 1950, and have one daughter who was born in 1951. The couple had marital difficulties which began in November, 1957. Mr. Piech suggested that they get a divorce, but Mrs. Piech objected. On several occasions he left home and stayed away for short periods of time.

In July, 1958, Raymond Piech was critically injured in an automobile accident. He has apparently lost his memory of the past and was declared incompetent on December 29, 1959. He has alternately been in and out of hospitals, rest homes, sanitariums; is unable to care for himself, both physically and emotionally, and is not aware of his rights or duties. Mr. Piech has been in the care of his parents since 1961, his father being the guardian of his person. His present actions toward his wife are such that it is extremely embarrassing for her to be in his presence, and she finds it impossible to even see him at this point. In the opinion of the psychiatrist, the incompetent "has some very uncoordinated, very low biological attachment to the physical person of Mrs. Piech as and when they are brought together without her ever being able to perform any behavior which is to his or her satisfaction." Mrs. Piech has commenced an action in Nevada for a divorce on the grounds of three years' separation, but has not carried this proceeding to its conclusion.

The estate of Raymond Piech has a value of $1,165,000, including $250,000 of life insurance. In July, 1957, before the automobile accident, Raymond Piech executed a Will. In this Will, Mary Piech, the wife of the testator, is given the household effects, automobiles and the other goods and chattels of the testator. The Will also creates two trusts. The corpus of the first trust consists of one-half of the estate, and the corpus of the second trust consists of the residuary estate. The wife of the testator is to receive all the income from the first trust for life and any amount of the principal as may be necessary for her support and maintenance. Upon the death of the wife, the principal shall be distributed according to the appointment made by the will of the wife. The second trust makes the same provisions for use of the income and principal for the support of the wife as the first. Upon the death of the wife, the income from the second trust is to go to the children of the testator with distributions of the corpus upon each child reaching a certain age.

The property settlement agreement proposed by the conservator and agreed to by the parents of the incompetent would require that instead of what Mary Piech would take under the Will she be paid the equivalent of one-third of the value of the incompetent's estate. Mrs. Piech would release all rights which now exist or which may arise out of the marital relationship. She would also agree to pay any liability for Federal Gift taxes arising out of the consummation of the agreement.

Section 122 of the Probate Act (Ill Rev Stats 1967, c 3, § 122) provides:

> The conservator of the estate under the direction of the court shall have the care, management and investment of the ward's estate, and under the direction of the court he shall manage the estate of his

ward frugally and shall apply the income and profits thereof so far as they may be necessary for the comfort and suitable support and education of the ward, his children, including children by adoption, and persons related by blood or marriage who are dependent upon, or entitled to support from him. When authorized so to do by the court for the comfort and suitable support and education of the ward, his children, including children by adoption, and persons related by blood or marriage who are dependent upon, or entitled to support from him, the conservator may make disbursement of his ward's funds directly to the ward or persons claiming through him or to the person to whom the ward, or persons claiming through him, or the ward's estate may become indebted, and be entitled to credit therefor in his accounts the same as if he had himself applied the sums for those purposes. If the income and the profits from the estate are insufficient for these purposes the conservator may use such portion of the corpus of the estate as the court orders from time to time. . . .

No claim was made either in the petition or at the trial that the income from the estate is insufficient to provide for the comfort and suitable support of the wife of the ward. Since, other than for the use of the ward, that is the only purpose for which the conservator is empowered by the statute to use the income or the corpus of the estate of the incompetent, the denial of the petition by the Circuit Court must be affirmed unless the court has power outside of the statute to grant the petition.

■ Under the common law of England, the power of control over the persons and property of incompetents belonged to the king as parens patriae and was exercised by him through the lord chancellor. The lord chancellor had this authority as the representative of the crown

and not in his character of chancellor or by virtue of the general powers of the chancery court. In the United States the states succeeded to the power of parens patriae which is exercised by the courts only through the authority of legislative enactment and is not included in their general equity powers. See the discussion in Cowdery v. Northern Trust Co., 321 Ill App 243, 256, 53 NE2d 43, 49, and cases cited therein.

This general principle was decisive in People ex rel. Pauling v. Misevic, 32 Ill2d 11, 203 NE2d 393, cert denied 380 US 963, which involved a plea even more deserving of sympathy than the one in the present case. In Misevic the brother of the relator petitioned for a writ of habeas corpus in his behalf. The relator had been confined in a state hospital for ten years since he had been found not guilty by reason of insanity of attempted murder. During his confinement he had become blind. The petition alleged that the relator was no longer insane and prayed for his release from confinement. However, relator's counsel admitted that relator was afflicted with schizophrenia, a form of insanity from which one never fully recovers. He could, therefore, not allege that relator was "entirely and permanently" recovered as the statute required. Although a writ had issued, it was quashed by the trial court, and the relator remanded to custody. The Supreme Court affirmed, holding that the equitable considerations did not allow the judiciary to act outside the authority granted by the legislature, which has sole power over the persons and property of the insane. Although the effects of the statute were harsh, they could only be changed by legislative action, not by judicial construction. The same is a fortiori true of the harsh effects of the statute involved in the instant civil case.

The appellants argue, however, that similar provision to that requested in this case has been made in Illinois for the dependents of an incompetent out of the principal

of his estate and that such a power is an inherent power of the courts. An examination of the cases relied upon will demonstrate that this contention is without foundation.

It was stated by the Supreme Court in Lewis v. Hill, 387 Ill 542, at 546, 56 NE2d 619, at 621, that:

> The governing principle in the management of property belonging to a person of unsound mind is the furtherance of his interest . . . . The court considers only the situation of the ward and does nothing wantonly or unnecessarily to alter the ward's property, but on the contrary takes care, for his sake, that if he recovers he shall find his estate as nearly as possible in the same condition as he left it. (Citing authorities.)

In Stokes v. Stokes, 240 Ill 330, 88 NE 829, cited by the appellants, the court did uphold a settlement between the conservator and the wife of the incompetent. However, this was in substitution of an antenuptial agreement which the husband and wife had entered into when the husband was competent. The antenuptial agreement in Stokes was a binding contract and the settlement was in lieu of that agreement while in the present case the wife seeks to make a settlement agreement in lieu of her taking under her husband's will which is not binding, but is revocable until his death. It should also be noted that in Stokes the wife took $1,650 and a horse instead of the $2,000 she would have been entitled to under the antenuptial contract when her husband, about eighty-five at the time of the settlement agreement, died. This is quite different from taking in place of a revocable bequest one-third of the estate of a forty-three-year old man who might become competent in the many years of expected life which remain to him.

In Newman v. Newman, 42 Ill App2d 203, 191 NE2d 614, also relied on by the appellants, the appellee had

been the defendant in a successful divorce action brought by her husband. Shortly after that action she was declared to be incompetent. Several months later her next friend, in lieu of her conservator, brought an action to vacate the decree of divorce. This action was settled with a modification of the original decree of divorce resulting in an increased property settlement in lieu of alimony for the incompetent. After she was again competent, the appellee petitioned to have the decree of divorce modified further to require her former husband to pay her an increased sum per week. This request was ordered by the Probate Court. On appeal this court reversed the part of the award which ordered permanent alimony. We held that a choice between alimony or a property settlement involved no element of personal discretion on the part of an incompetent and could as well be exercised by the court having jurisdiction over the incompetent's estate. The primary consideration in Newman was that the property settlement agreed to by the court had been in the best interest of the incompetent. It should also be pointed out that the decision in Newman sustained a payment to the incompetent and did not involve a disposition of property belonging to the incompetent which is what is sought in the present case.

The cases which the appellants rely on from other jurisdictions only show that those jurisdictions recognize greater power in the courts in this field than Illinois and several other jurisdictions traditionally have. Nonnast v. Northern Trust Co., 374 Ill 248, 29 NE2d 251, dealt with the duty of a conservator to account and the necessity of claims being filed and proven before paid. It does not aid the appellants. The power of Illinois courts over guardianships has traditionally been broader and is not analogous to the power of the judiciary over the persons and property of incompetents. In re Guardianship of Smythe, 65 Ill App2d 431, 437, 213 NE2d 609, 613.

■ Since the legislature has sole power over the persons and property of incompetents and has not granted to the judiciary the authority to approve a property settlement such as the one proposed in this case, the judgment of the Circuit Court must be affirmed.

Judgment affirmed.

MURPHY and McNAMARA, JJ., concur.