DOROTHY C. SCHLIEPER, Conservator of the Estate of Randal J. Clark, Incompetent, Petitioner-Appellee, *v.* FLORENCE I. RUST, Respondent-Appellant.

Fifth District   No. 76-353

Opinion filed March 11, 1977.

Reed, Armstrong, Gorman & Coffey, of Edwardsville (Stephen W. Thomas, of counsel), for appellant.

Cox and Bassett, P.C., of Wood River (William M. Cox, Jr., of counsel), for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Respondent Florence I. Rust appeals from an order of the probate division of the Circuit Court of Madison County that she surrender the passbook to a certain savings and loan account of which she was joint tenant with Randal J. Clark, an incompetent, to the conservator of Clark's estate, petitioner-appellee Dorothy C. Schlieper.

On January 13, 1976, Randal J. Clark was adjudicated incompetent, and Mrs. Schlieper, his daughter, was appointed conservator. That same day, she filed a sworn "petition for writ of citation to discover assets" which recited her appointment and that:

> " * * * [I]t has come to her attention that there is a Twenty Thousand Dollar ($20,000) deposit in the Citizens Savings & Loan Association, East Alton, Illinois, evidenced by a passbook issued to Randal J. Clark, which account would in the event of his death be paid to Florence Rust.
>
> That the said Florence Rust has possession of the passbook and has refused to surrender the same to the conservator.

That the conservator's expenses incurred on behalf of the incompetent will require marshalling of these and other funds of the incompetent in order to have funds available for his expenses."

The petition concluded:

"WHEREFORE the Petitioner prays the Court to issue a Writ of Citation to discover assets upon Florence Rust ordering her to appear within a short day to produce in Court the savings passbook."

The petition was allowed, and Mrs. Rust was directed to appear in court and produce the passbook on January 19, 1976, by citation filed on January 14, 1976.

On the appointed day, Mrs. Rust appeared with the passbook and a dividend check on the account. She was the sole witness at the hearing which ensued. She testified that she was Mr. Clark's sister, and that he had resided in her home from March 1974 (four months after his wife's death) until December 1975, when he entered the hospital. She testified that the account at Citizens Savings and Loan, opened October 7, 1975, was in her own and her brother's name; that the $20,000 deposited in the account had been her brother's; and that he had cashed all dividend checks on the account prior to the one which she produced in court, which was made payable to her or her brother in the amount of $109.20. According to her, the joint savings account was opened at her suggestion after her brother stated his intention to change his will and leave his entire estate to her. She said that he had become sick after living with her for some time. She called his grandson to take him to the doctor. He stayed with the grandson for several days but was not satisfied there. After a number of telephone calls, she brought him back to her home.

" * * * When we got home Randal was so mad at the grandson, so angry. He said, 'Florence, I want to go to Edwardsville and make my will over and give you everything, and appoint you my executor.' I said 'I don't want you to do that. I would like to go to bed at night and sleep. They would all blame me.' He had $25,000.00 in a bank account. I told him if you want to give me something give me $20,000.00 of that. Go to the building and loan and put it in our names. It is yours as long as you live and when you die it will come to me. I said I don't want the other. That is the way it was.* * *."

Immediately after respondent's testimony, the court said:

"It appears to me that the source of the funds represented by this certificate were individually owned by Randal J. Clark and it further appears that this account was probably set up as a convenience arrangement. It further appears to me that these

funds belonged individually to Randal Clark. I think that is uncontradicted. That being the case they should be transferred to the conservator appointed by this Court."

The court then ordered the funds represented by the passbook and the dividend check transferred to the conservator to he held and administered by her as directed by the Probate Act, and entered a written order to that effect.

On February 3, 1976, Mrs. Rust filed a motion to set aside the judgment of January 19, 1976, in accordance with section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 50(5)), on the grounds that it deprived her of property without due process of law; that it was contrary to the law and the evidence; that the court was without jurisdiction to render a formal judgment because by the petition the conservator had merely sought to examine the passbook in issue and there were no pleadings seeking any other relief; and that the court lacked jurisdiction because the citation was served less than 10 days before the return day designated therein, contrary to statute. The motion further sought a new hearing to determine whether Clark had intended the funds in the joint account to be a gift to Mrs. Rust, and whether these funds were necessary for Clark's maintenance and support. Appended to the motion was a memorandum of law and a copy of the application for the joint savings account, dated October 7, 1975, and signed by Florence I. Rust and Randal J. Clark. On February 24, 1976, a hearing was held on the motion to set aside the judgment. (Apparently no transcript of this hearing was made, as none appears of record.) On May 26, 1976, the motion was denied. This appeal followed.

Appellant urges four reasons why the trial court's order should be reversed: the court lacked jurisdiction to undertake the hearing because of failure to comply with the statutory requirement that the writ of citation be served at least 10 days before the hearing; it lacked jurisdiction to order the funds transferred because such relief was beyond the scope of the petition; it erred in ordering the funds transferred without a prior determination that they were needed for the incompetent's support and maintenance; and its conclusion that the savings account was an account of convenience was contrary to the law and the evidence.

The proceedings below were apparently conducted under authority of section 16—1 of the Probate Act of 1975, which took effect January 1, 1976 (Ill. Rev. Stat. 1975, ch. 3, par. 16—1).[1]

---

[1] Except as otherwise indicated in the discussion that follows, this statute is substantially the same as the predecessor statute. (See Ill. Rev. Stat. 1975, ch. 3, pars. 183-86, effective until January 1, 1976.) Thus most cases decided under the old Probate Act retain their persuasive value.

That section provides, in pertinent part:

"(a) Upon the filing of a petition therefor by the representative[2] * * *, the court shall order a citation to issue for the appearance before it of any person whom the petitioner believes (1) to have concealed, converted or embezzled or to have in his possession or control any personal property, books of account, papers or evidences of debt or title to lands * * * which belongs to his estate or to his representative or (2) to have information or knowledge withheld by the respondent from the representative and needed by the representative for the recovery of any property by suit or otherwise. The petition shall contain a request for the relief sought.

(b) The citation must be served not less than 10 days before the return day designated in the citation and must be served and returned in the manner provided for summons in civil cases.

* * *

(d) The court may examine the respondent on oath whether or not the petitioner has proved the matters alleged in the petition, may hear the evidence offered by any party, may determine all questions of title, claims of adverse title and the right of property and may enter such orders and judgment as the case requires.

* * *"

Section 16—3 provides that upon demand of a party, "questions of title, claims of adverse title and the right of property shall be determined by a jury as in actions at law." Ill. Rev. Stat. 1975, ch. 3, par. 16—3.

The Probate Act provides that it "shall be liberally construed to the end that controversies and the rights of the parties may be speedily and finally determined and the rule that statutes in derogation of the common law shall be strictly construed does not apply." (Ill. Rev. Stat. 1975, ch. 3, par. 1—9; cf. Ill. Ann. Stat., ch. 3, par. 9, Historical Note, at 25 (Smith-Hurd 1961).) Notwithstanding this provision, the reviewing courts of this State have been vigilant to detect and disapprove the exercise of power by the lower courts in matters relating to incompetents which exceeds that expressly given them by statute. The theoretical justification for the extreme deference to the legislature in such cases has been that state legislatures in this country succeeded to the power of control over incompetents which belonged at the common law to the king of England as parens patriae. (See the discussions in Dodge v. Cole, 97 Ill. 338, 354-55 (1881); In re Estate of Piech, 117 Ill. App. 2d 403, 406-10, 254 N.E.2d 565, 567-68 (1st Dist. 1969); and Cowdery v. Northern Trust Co., 321 Ill. App. 243, 256-57, 53 N.E.2d 43, 49 (1st Dist. 1944).) The opinion of our supreme

[2] " 'Representative' includes * * * conservator * * *." (Ill. Rev. Stat. 1975, ch. 3, par. 1—2.11.)

court in *People ex rel. Pauling v. Misevic,* 32 Ill. 2d 11, 203 N.E.2d 393, (1964), *cert. denied,* 380 U.S. 963, 85 S. Ct. 1107, 14 L. Ed. 2d 154 (1965), exemplifies the judicial attitude in cases involving incompetents. Mr. Justice Daily, writing for a unanimous court, acknowledged the equities in the appellant's argument, but concluded:

"  * * *  These considerations, however, afford no basis for the judiciary to invade the province of the legislative arm of our government. The State, as *parens patriae,* exercises the same control over insane persons as was formerly exercised in England by its king, and under our form of government the power is exercised by the courts only through legislative enactments. [Citations.] Stated differently, it is the function of the legislature to pass laws for regulation of the property and person of those who are insane, and the judicial power may be exercised only in conformity with such laws.

"  * * *  Where the words employed in a legislative enactment are free from ambiguity or doubt, they must be given effect by the courts even though the consequences may be harsh, unjust, absurd or unwise. [Citations.] Such consequences can be avoided only by a change of the law, not by judicial construction, [citation] and, by the same token, courts are not at liberty to read exceptions into a statute the legislature did not see fit to make, [citation] or, by forced or subtle constructions, to alter the plain meaning of the words employed.  * * *  " (32 Ill. 2d 11, 14-15, 203 N.E.2d 393, 395.)

It is with such an attitude that we approach appellant's jurisdictional arguments in this case.

Appellant points out that the General Assembly has emphatically provided, in section 16—1(b) of the Act, that the citation *must* be served at least 10 days before the respondent is required to appear. (Ill. Rev. Stat. 1975, ch. 3, par. 16—1(b).) Before the new Probate Act came into effect, the word "shall," not "must," was used. (See Ill. Rev. Stat. 1975, ch. 3, par. 183, effective until January 1, 1976.) Although the word "shall," as used in the old Act, is ordinarily interpreted as mandatory (see, *e.g., Arnold Lies Co. v. Legler,* 26 Ill. App. 2d 365, 375, 167 N.E.2d 813, 818 (2d Dist. 1960); *McReynolds v. Civil Service Com.,* 18 Ill. App. 3d 1062, 1066, 311 N.E.2d 308, 311 (1st Dist. 1974)), and we have found no cases decided under the statute with which we are here concerned which gave it any other meaning, courts have not invariably so treated it. (See *Teece v. Boyle,* 345 Ill. App. 88, 96-98, 102 N.E.2d 347, 351 (3d Dist. 1951); *O'Donoghue v. St. Louis Southwestern Ry. Co.,* 181 Ill. App. 286 (1st Dist. 1913).) The only reason we can hypothesize for the change in wording is that the General Assembly wanted to make it clear beyond peradventure that 10 days'

notice to the respondent is mandatory before a hearing can be held in a citation proceeding. "Short-cut court proceedings cannot be substituted for the provisions of a special statute where the rights and liberty of a citizen are involved." (*In re Estate of Rackliffe*, 366 Ill. 22, 28, 7 N.E.2d 754, 757 (1937).) As the United States Supreme Court recognized long ago, statutory requirements

> " * * * intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, * * * are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise." *French v. Edwards*, 80 U.S. (13 Wall.) 506, 511, 20 L. Ed. 702, 703 (1872).

■■ Although there is merit to this argument, we choose rather to rest our decision here on appellant's other jurisdictional contention. A citation proceeding under section 16—1(a) of the Probate Act, as indicated by the two subsections of the statute, has two separate and different, though related, objectives: to obtain the return of property of the estate wrongfully concealed or controlled by another, and to discover information needed to recover estate property. (Ill. Rev. Stat. 1975, ch. 3, par. 16—1(a); *Lombardi v. Lepkowicz*, 28 Ill. App. 3d 79, 328 N.E.2d 328 (1st Dist. 1975); *In re Estate of Garrett*, 81 Ill. App. 2d 141, 224 N.E.2d 654 (2d Dist. 1967).) The statute by its terms gives the court authority to determine property rights, but it also requires the conservator's petition to contain a request for the relief sought and gives the respondent the right to demand that a jury determine questions of property rights. If the prayer for relief is limited to the discovery of information, the court does not have the power to make a final determination of rights of property. (*Radice v. Antonacci*, 87 Ill. App. 2d 139, 231 N.E.2d 107 (2d Dist. 1967); *Schwaan v. Schwaan*, 320 Ill. App. 287, 50 N.E.2d 861 (1st Dist. 1943).) Jurisdiction to adjudicate rights of property under such a petition must be properly invoked by the issues raised in the pleadings, and an order purporting to determine matters beyond these issues is a nullity. (*Radice v. Antonacci; Moser v. Feciura*, 324 Ill. App. 552, 58 N.E.2d 920 (1st Dist. 1945).) Orderly procedure requires that the right to jury determination of questions of title and property rights should be ascertainable at the beginning of the proceeding. *In re Conservatorship of Baker*, 79 Ill. App. 2d 234, 223 N.E.2d 744 (4th Dist. 1967).

■■ The petition in this case prayed for a writ of citation to discover assets ordering Mrs. Rust to produce in court the passbook to the joint savings account in question. It did not request transfer of the funds to the conservator's account. We agree with appellant that, absent such a

request, the court had no power to afford such relief. As was said in *In re Estate of Garrett,* 81 Ill. App. 2d 141, 224 N.E.2d 654 (2d Dist. 1967), *appeal after remand,* 109 Ill. App. 2d 243, 248 N.E.2d 539 (2d Dist. 1969):

> " * * * [I]f the petition sought only information, the court could not then try the question of title to the various properties and order them turned over to the estate. The citation procedure * * * affords a simple, comprehensive and summary method of invoking the aid of the court. While courts are liberal in the procedures they permit to be followed under these sections, an order must still be based upon an issue established in the pleadings. Such requirement is imperative so that the respondent may know the issues which he will be called upon to defend before the court. [Citations.]
>
> * * *
>
> * * * The procedural aspects of due process and equal protection of the laws require that a person be given notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case." (81 Ill. App. 2d 141, 147-48, 224 N.E.2d 654, 658-59.)

*Cf. In re Estate of Baxter,* 9 Ill. App. 3d 92, 291 N.E.2d 851 (4th Dist. 1973); *Greig v. Johnson,* 22 Ill. App. 3d 646, 317 N.E.2d 627 (1st Dist. 1974).

We hold, therefore, that the trial court exceeded its statutory authority in ordering the joint account funds transferred to the conservator, and its order must be reversed.

Because of the possibility that the ownership of the funds in question may be the subject of further litigation,[3] we think it appropriate to address briefly appellant's other contentions, which go to the merits of the case. In *Rozycke v. Sroka,* 3 Ill. App. 3d 741, 279 N.E.2d 155, (5th Dist. 1972), this court was also faced with a controversy between a joint tenant of a savings account and the conservator of the other joint tenant's estate. We here reaffirm what we said there: that a conservator should not take it upon himself to determine rights in a joint account, but should submit the matter to the court to decide whether the joint funds are necessary for the support and maintenance of the incompetent; that if no petition is filed by the conservator to permit the court to establish the need for the funds prior to commencement to the citation proceedings, the petitioner has no right to recover under the citation; and that to permit a conservator to destroy a valid joint account agreement established prior to

---

[3] Appellant has informed us (improperly, according to appellee) that Randal J. Clark died on March 31, 1976, after the court's order but before denial of the post-trial motion to vacate. Thus it is conceivable that petitioner could have demonstrated, under appropriate pleadings giving the requisite notice, that some portion of the funds was necessary for the incompetent's support and maintenance.

incompetency would empower the conservator, in effect, to decide who should be the beneficiary of the incompetent's largesse. (See section 11—13 of the Probate Act (Ill. Rev. Stat. 1975, ch. 3, par. 11—13), which places *the court,* under whose direction the conservator acts, in charge of the person and estate of the ward.)

We also pointed out in *Rozycke* that "there is no substantial question but that an instrument creating a joint account presumably speaks the whole truth and in order to go behind the terms of the agreement the one claim adversely thereto has the burden of proving by clear and convincing evidence that a gift was not intended." (3 Ill. App. 3d 741, 744-45, 279 N.E.2d 155, 157.) This principle is well settled. See, *e.g., Murgic v. Granite City Trust & Savings Bank,* 31 Ill. 2d 587, 202 N.E.2d 470 (1964); *In re Estate of Macak,* 14 Ill. App. 3d 261, 302 N.E.2d 436 (1st Dist. 1973); *Inwood v. Nilsson,* 96 Ill. App. 2d 272, 238 N.E.2d 277 (2d Dist. 1968); *Graves v. Graves,* 42 Ill. App. 2d 438, 192 N.E.2d 616 (2d Dist. 1963). See also section 2(c) of the Joint Rights and Obligations Act (Ill. Rev. Stat. 1975, ch. 76, par. 2(c)).

In the instant proceedings, the court made no preliminary determination of the necessity of the funds in the joint account for the incompetent's support and maintenance; there was absolutely no evidence to controvert Mrs. Rust's testimony as to the circumstances surrounding the creation of the account; and the instrument creating the account, which conformed to statute and was introduced at the post-trial hearing, raised a presumption of Mr. Clark's donative intent. Therefore, even if the court below had properly acquired jurisdiction to make a final adjudication of the rights to the joint account, on the evidence adduced it should have granted the post-trial motion to vacate the order transferring the funds to the conservator. By these remarks reaffirming our holding in *Rozycke* we do not, of course, mean to express any opinion as to the outcome of any future litigation, where the issues and the evidence might be substantially different from those in the present record.

Reversed.

CARTER, P. J., and EBERSPACHER, J., concur.