# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### JULY 9, 2001 Session

## DAVID PITTS v. FLOYD R. BLACKWELL, SR.

**Direct Appeal from the Probate Court for Franklin County**
**No Trial Court Number Available; The Honorable Floyd Don Davis, Judge**

---

**No. M2000-01733-COA-R3-CV - Filed December 28, 2001**

---

This appeal involves the decision of a probate court to approve the amended first and final accounting of a conservatorship and award attorney's fees for the conservator's defense of the accounting. The conservator, owner of a funeral home, conducted a $26,367.75 funeral for the conservatee. An interested party objected to approval of the funeral expenses and a hearing was held. The probate court ordered the conservator to return the proceeds from a prepaid burial life insurance policy to the estate, but confirmed the accounting in all other respects. For the following reasons, we affirm in part, reverse in part, vacate in part and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed in Part, Reversed in Part, Vacated in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Guy R. Dotson, Sr., Gregory M. Reed, Murfreesboro, TN, for Appellant

Fannie J. Harris, Nashville, TN, for Appellee

## OPINION

### Facts and Procedural History

Jean Helen West (Ms. West) was an elderly patient at Winchester Health Care Center suffering from Alzheimer's type dementia. During much of the time Ms. West was a patient at the care center, John B. Cunningham (Mr. Cunningham) held a power of attorney, which enabled him to handle her financial affairs. Mr. Cunningham, however, passed away leaving no one to attend to Ms. West's needs.

On May 19, 1998, Floyd R. Blackwell, Sr. (Mr. Blackwell) and Theresa Joan Cunningham (Ms. Cunningham) petitioned the probate court of Franklin County, Tennessee to be appointed co-

conservators of the person and estate of Ms. West. The probate court granted the petition and appointed Mr. Blackwell and Ms. Cunningham co-conservators on June 2, 1998. The conservatorship would last less than eight months, however, due to Ms. West's death on January 23, 1999. Ms. Cunningham and Mr. Blackwell were both compensated $1,200.00 for their services as co-conservators.

Mr. Blackwell, at all times relevant to this appeal, owned and operated Johnson-Blackwell Funeral Home. Mr. Blackwell testified that before he became a co-conservator and before Ms. West's death, Mr. Cunningham professed a desire to transfer Ms. West's prepaid burial insurance policy from Moore Cortner Funeral Home to Mr. Blackwell's funeral home.[1] The policy, however, was never transferred by Mr. Cunningham. Instead, after Mr. Cunningham's death and after Mr. Blackwell became a co-conservator, Mr. Blackwell and Ms. Cunningham transferred the policy to Mr. Blackwell's funeral home.

Upon Ms. West's death, Ms. Cunningham and Mr. Blackwell approached their attorney to determine if they had the authority to handle Ms. West's funeral arrangements. The attorney indicated that as co-conservators, their authority over the estate extended past Ms. West's death for the purpose of arranging her funeral. The decision was made to allow Mr. Blackwell's funeral home to arrange the funeral. Mr. Blackwell testified that Ms. Cunningham made all of the decisions regarding Ms. West's funeral including the services and products selected. Mr. Blackwell's testimony indicates that he merely provided Ms. Cunningham with the catalogs used to select the casket and vault and played no part in the decision making process.[2]

The cost of the funeral totaled $26,367.75 and was the most expensive funeral ever performed by Mr. Blackwell. Other than Ms. West's, the costliest funeral arranged by Mr. Blackwell was completed for approximately $12,000. The unusually high costs associated with Ms. West's funeral resulted from the purchase of a high-end casket and vault. The casket, costing the estate $7,227.50, was marked up approximately 300 percent according to the testimony of Mr. Blackwell. The solid bronze vault, costing the estate $14,100, was marked up approximately 100 percent. Accordingly, it appears on the purchase and sale of the vault and casket alone, Mr. Blackwell earned a profit of approximately $12,000. Mr. Blackwell testified that percentage mark-ups on the casket and vault were the mark-ups he applied to all caskets and vaults. Accordingly, the higher the price of the items sold, the higher Mr. Blackwell's profits would be.

---

[1] Under this policy, Ms. West was the insured and Ms. Cunningham was the beneficiary. The policy also listed a "certificate holder." Although not abundantly clear from the record, the policy listed a funeral home referred to as a certificate holder. The certificate holder was apparently to collect on the proceeds from the beneficiary for the funeral costs. Thus, when discussing the transfer of the policy to Mr. Blackwell's funeral home, we are indicating a change in the listed certificate holder.

[2] Ms. Cunningham passed away before the proceedings were held. Accordingly, Ms. Cunningham's testimony was unavailable.

Ms. West's funeral was paid for out of Ms. West's estate as well as by the prepaid burial insurance policy. Before the funeral, a check totaling $3,000.00 was written by Ms. Cunningham to Mr. Blackwell's funeral home. Mr. Blackwell utilized these funds as a down payment on the casket. The funds from the burial policy, totaling $7,731.93 were also given to Mr. Blackwell. The amount still owed on the funeral was paid to Mr. Blackwell by check. Mr. Blackwell filled out this check for $15,527.83 and took it to Ms. Cunningham for her signature. Ms. Cunningham signed the check and Mr. Blackwell cashed it.

Ms. Cunningham and Mr. Blackwell filed a first and final accounting with the probate court on March 15, 1999. The accounting listed only the $3000.00 down payment check for funeral expenses. Mr. Blackwell gave several reasons in his testimony as to why the $15,527.83 check and the burial policy funds were not listed. First, Mr. Blackwell testified that the check had not "cleared"the bank when the accounting was written. It appears from the record, however, that the check had cleared the bank on March 5, 1999, ten days before the accounting was filed. We assume, most likely, Mr. Blackwell meant that the check had not yet been returned with the following month's statement. Mr. Blackwell further testified that although both he and Ms. Cunningham signed the accounting, Ms. Cunningham had control over the information needed for the accounting and that she was the one to prepare the accounting.

Ms. Cunningham passed away on March 11, 1999, soon after the first and final accounting was filed. In August 1999, Mr. Blackwell filed a motion with the probate court to amend the first and final accounting. The amended first and final accounting contained several alterations to the original accounting, including the addition of the $15,527.83 check paid to Mr. Blackwell's funeral home and the burial policy proceeds.

David Pitts (Mr. Pitts), an interested party, objected to the accounting and a hearing was held on April 18, 2000. At the hearing, Mr. Blackwell was the only one to testify to the transactions due to the deaths of other knowledgeable parties. The court requested briefs from all interested parties before a decision could be made. On June 7, 2000 the court issued an order acknowledging Mr. Blackwell's testimony that he declined to act in his capacity as conservator with respect to the funeral arrangements and never signed any checks. The order required Mr. Blackwell to return the proceeds from the burial policy to Ms. West's estate, approved the accounting in all other respects, and closed the conservatorship. Thus, the probate court approved only $18,635.82 of the $26,367.75 funeral bill. The probate court further ordered that all attorney's fees resulting from the litigation be paid by Ms. West's estate.

Mr. Pitts appeals the probate court's decision and raises the following three issues for review:

I.      Whether Mr. Blackwell breached his fiduciary duty to Ms. West when he provided funeral and burial services for her while continuing to maintain his position as co-conservator;

II.     Whether the court erred in ordering the fees of Mr. Blackwell's attorney, Fannie Harris, and the conservator's fee of Mr. Blackwell be paid from Ms. West's estate;

III.     Whether the funeral and burial expenses were reasonable and proper under section 34-11-113(e) of the Tennessee Code.

## Standard of Review

We review this case *de novo* upon the record with a presumption of correctness of the probate court's findings of fact unless the preponderance of the evidence is otherwise. Conclusions of law are reviewed *de novo* with no presumption of correctness. TENN. R. APP. P. 13(d).

## Law and Analysis

Our review begins with an analysis of Mr. Pitt's first issue: whether Mr. Blackwell breached fiduciary duties owed to Ms. West. Pursuant to section 34-11-113 of the Tennessee Code, the fiduciary duties owed by a conservator "shall not cease at the death of the disabled person, but shall continue for the sole purpose of making reasonable and proper funeral arrangements for the disposition of the remains of the disabled per, at death." Thus, Mr. Blackwell remained a fiduciary to the estate of Ms. West upon her death with regard to the funeral arrangements, and his actions should appropriately be analyzed under the constraints demanded by holding such a position.

In Grahl v. Davis, 971 S.W.2d 373 (Tenn. 1998), Justice Drowota provided a thorough summary of the fiduciary duties surrounding the relationship between conservator and ward, which we quote:

> . . . The purpose of appointing a conservator is "to preserve the estate of an incompetent or disabled person." Tenn.Code Ann. § 34-4-202 (1991 Repl.). Pursuant to Tenn.Code Ann. § 34-4-207 (1991 Repl.), a conservator "shall have the same duties and powers as a guardian of a minor, and all laws related to the guardianship of a minor shall be applicable to a conservator." A conservator occupies a fiduciary position of trust of the highest and most sacred character. See Meloy v. Nashville Trust Co., 177 Tenn. 340, 149 S.W.2d 73 (1941). The conservator is to manage the conservatee's estate to the best advantage. See Steele v. Reese, 14 Tenn. (6 Yer.) 263 (1834). The conservator should endeavor to manage the estate so that if the incompetent person recovers, he or she will find the estate as nearly as possible in the same condition as he or she left it. See Folts v. Jones, 175 Tenn. 77, 132 S.W.2d 205, 208 (1939). A conservator should not change the character of the conservatee's property interests unless the change is necessary to protect and promote the interests of the conservatee. Id. In considering a conservator's request to cash a life insurance policy for the benefit of the conservatee's estate, this Court, in Folts v. Jones stated:
>
> > Before the character of the interest in property held by a [conservatee] can be changed, it must be made manifest that it is necessary to protect and promote his interest. Although as a rule, the court will preserve, as far as possible, the interests of the succession, this rule yields to the paramount rule which makes the [conservatee's]

welfare the first consideration without regard to the rights of those who may have eventually rights to succession.

Id.; see also Morris v. Morris, 195 Tenn. 133, 258 S.W.2d 732 (1953).

A conservator is not the alter ego of the conservatee, however, and has no authority to exercise an elective right or power of the conservatee. Folts, 132 S.W.2d at 207. Therefore, a conservator has no authority to terminate joint accounts in which the conservatee has an interest or to change a beneficiary on a life insurance policy. Folts, 132 S.W.2d at 207; see also Howard v. Imes, 265 Ala. 298, 90 So.2d 818 (1956); In re: Estate of Wright, 430 Mich. 463, 424 N.W.2d 268 (1988); Hendricks v. Grant County Bank, 379 P.2d 693, 697 (Okla. 1963); Matter of Guardinaship of Rich, 520 N.W.2d 63 (S.D. 1994); Rozycke v. Sroka, 3 Ill.App.3d 741, 279 N.E.2d 155 (1972); Matter of Estate of Briley, 16 Kan.App.2d 546, 825 P.2d 1181 (1992); Maess v. Greenfield, 547 S.W.2d 777 (Ky. Ct. App. 1977); Strain v. Rossman, 47 Or.App. 57, 614 P.2d 102 (1980). Instead, the conservator must petition the court, and the court, on behalf of the conservatee, can exercise such an election if it is clearly proven to be in the best interests of the conservatee. Folts v. Jones, 132 S.W.2d at 207; see also Schlieper v. Rust, 46 Ill.App.3d 319, 4 Ill.Dec. 817, 822, 360 N.E.2d 1192, 1197 (1977); Rozycke v. Sroka, 279 N.E.2d at 158.

A conservator owes the conservatee an undivided duty of loyalty. 18 Tenn. Juris., *Mentally III and Other Incompetents,* § 8, p. 323 (1984). The conservator cannot be allowed by law to have any inducement to neglect the interests of the conservatee. Freeman v. Martin, 181 Tenn. 470, 181 S.W.2d 745, 746 (1944). Therefore, it is generally held that a conservator violates his or her fiduciary duty by acquiring, by purchase or otherwise, the property of the conservatee. Id.; see also Lanius v. Donnell, 222 Tenn. 58, 432 S.W.2d 659(1968).

Grahl, 971 S.W.2d at 377-78 (footnote omitted).

The Tennessee Supreme Court has also discussed possible conflicts arising from transactions between a conservator and ward. In Meloy, the court noted the similarity of the fiduciary duties owed by trustees and conservators and stated that the duties of the conservator are more stringently applied than to other classes of trusts. Meloy, 149 S.W.2d at 75. The court, borrowing from the case law of a sister state, further stated, "Nothing in the law of fiduciary trusts is better settled than that the trustee *shall not be allowed to advantage himself in dealings with the trust estate.* He shall not be allowed to serve himself under the pretense of serving his cestui que trust." Id. (citation omitted) (emphasis added).

Here, the testimony given by Mr. Blackwell demonstrates the difficulty inherent in any transaction between conservator and ward:

Q: Now, as conservator of her estate, did you not realize that you were doing business with yourself?

A:     No, I did not.

Q:     You didn't realize that you as a conservator when you made this transaction you were going to be doing business with [Floyd] Blackwell, the undertaker?

. . .

A:     Yes.

Q:     And under that policy, if you buried her for that amount of money you were going to make a profit, weren't you?

A:     Yes.

Q:     And, so, you actually were going to make money from your conservator – or the conservatee's estate?

A:     I would be paid by the estate, that's correct.

Q:     But you were also being paid to conserve her estate?

A:     That's correct.

Q:     So, on one hand you are paying to take care of it, and on the other hand you were having her pay you money?

A:     Yes.

Throughout Mr. Blackwell's testimony, he vigorously denies any involvement in the selection process, which led to the large profit he received from Ms. West's estate. Mr. Blackwell testified, however, that he would have received a profit no matter what products were selected. The significance of this testimony is further exemplified given the fact that Mr. Blackwell played a role in the decision to have the funeral at his funeral home and in having the prepaid burial policy arranged for his benefit.

Although Mr. Blackwell's testimony appears to indicate his removal from the selection process, as a co-conservator his duties to Ms. West's estate remained as a matter of law. Without court involvement either approving the transaction beforehand or removing him from the position of co-conservator, Mr. Blackwell's duty to Ms. West's estate survived any distance he attempted to place between himself and the selection process. We do not find any indication of fraud or deceit in the transaction between Mr. Blackwell and Ms. West's estate, and do not imply that any such fraud or deceit was found. The finding of fraud or deceit, however, is not necessary for our conclusion that Mr. Blackwell improperly benefitted from the transaction.

Mr. Blackwell argues that he has overcome any presumption of a breach of fiduciary duty because the services provided were necessary, reasonable, and proper and, further, promoted Ms. West's best interest. Mr. Blackwell correctly states that there can be no dispute that the funeral services were necessary and promoted Ms. West's interest. Mr. Blackwell's argument, however, focuses on the services provided by him through his funeral home instead of the transfer of the prepaid burial policy and the decision for his funeral home to handle the arrangements. As indicated by the prepaid burial policy, Ms. West had made the decision to have her funeral handled by Moore Cortner Funeral Home before becoming incompetent. Mr. Blackwell offered no proof that the switch to his funeral home was necessary, reasonable, or proper in any respects. Although Mr. Blackwell refers to a desire by a former attorney-in-fact to transfer the policy, the decision was made by Mr. Blackwell and Ms. Cunningham for Mr. Blackwell's funeral home to handle the arrangements.

We also find Mr. Blackwell's argument that the issue of breach of fiduciary duty is not "ripe" for review to be without merit. Throughout the hearing in probate court, Mr. Pitts referred to Mr. Blackwell's fiduciary duties to Ms. West's estate. Thus, the issue was litigated even though the final order of the probate court failed to include the reasoning for its findings. The mere fact that the final order did not specifically refer to Mr. Blackwell's fiduciary duties does not preclude this Court from reviewing the issues addressed by the court.

Thus, under the facts of this case, we hold that Mr. Blackwell, as a matter of law, was not entitled to earn a profit from the estate of Ms. West. Any profit earned by Mr. Blackwell in connection with Ms. West's funeral and burial should not have been approved. Accordingly, with regard to this issue, the probate court's approval of the accounting is vacated. We remand this case for a determination of the reasonable and necessary funeral expenses commensurate with an estate the size of Ms. West's. This amount may be approved in the final accounting so long as it does not exceed the actual expenses incurred by Mr. Blackwell's funeral home in handling the arrangements.

With regard to the second issue raised by Mr. Pitts, we hold that the probate court erred in ordering Mr. Blackwell's attorney's fees associated with his defense of the amended first and final accounting be paid by Ms. West's estate. Because neither this Court nor the parties to this action find precedent concerning the payment of attorney's fees in defense of a conservator's accounting, we deem it proper to analogize this situation to the defense of an executor's accounting. When an accounting prepared by the fiduciary of an estate is challenged on grounds of breach of fiduciary duty, the fiduciary may collect attorney's fees only where the accounting is successfully defended in all respects. In re Estate of Wallace, 829 S.W.2d 696, 704 (Tenn. Ct. App. 1992). "If the [fiduciary] does not prevail completely, or where it is partially to blame for the bringing about unnecessary litigation, the [fiduciary] rather than the estate should be responsible for its legal expenses." Id. (citations omitted).

Here, Mr. Pitts objected to the accounting raising allegations of breach of fiduciary duty. As a result of this objection, the probate court ordered Mr. Blackwell to return the proceeds of the prepaid burial policy to the estate. Thus, because Mr. Blackwell was unsuccessful in completely defending the accounting, his attorney's fees should not be paid for by Ms. West's estate.

With regard to the conservator's fee paid to Mr. Blackwell, however, we affirm the decision of the probate court. It is apparent from the record that Mr. Blackwell provided services to the estate other than through his involvement with Ms. West's funeral and burial. Thus, we find no error in the probate court's award of compensation for those services.

Because we vacate the probate court's order confirming the accounting and remand for a determination of the reasonable and necessary funeral expenses not to exceed the actual expenses incurred by Mr. Blackwell's funeral home, we fail to reach Mr. Pitts' third issue.

## Conclusion

For the foregoing reasons, the decision of the lower court is affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed equally against the Appellant, Mr. Pitts, and his surety, and the Appellee, Mr. Blackwell, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE